EDMUND J. NEWMAN et al., Respondents, *v.* EARLE B. ALVORD et al., Appellants.

The name of a place may be adopted and used as a trade-mark.

*It seems* that it is not necessary that the claimant of a trade-mark in an action for its infringement should show an exclusive right to it. The right must be exclusive as against defendant. The principle upon which relief is granted is that defendant shall not be permitted, by the adoption of a trade-mark which is untrue and deceptive, to sell his own goods as those of plaintiff, thus injuring the latter and defrauding the public.

Plaintiffs and those whom they had succeeded had for many years been engaged in manufacturing cement or water-lime from stone, taken from quarries near Akron, Erie county. They sold the same, and it was known in the market as Akron cement. Their barrels were labeled "Newman's Akron Cement Company, manufactured at Akron, N. Y. The Hydraulic Cement known as the Akron Water Lime." There were other quarries near Akron not owned by plaintiffs. Defendants manufactured a cement from stone quarried near Syracuse. They labeled their barrels as follows: "Alvord's Onondaga Akron Cement or Water-Lime, manufactured at Syracuse, N. Y." They used the word "Akron" for the purpose of availing themselves of the reputation plaintiffs' cement had acquired. *Held*, that, as against defendants, plaintiffs had the right to the exclusive use of the word "Akron" as a trade-mark, and were entitled to an injunction against the former, restraining them from its use.

The authorities upon the subject of trade-marks, collated and discussed.

(Argued May 15, 1872; decided September term, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the eighth judicial district, affirming a judgment rendered in favor of plaintiffs, entered upon the decision of the court at Special Term. (Reported below, 49 Barb., 588.)

The action is for a perpetual injunction, restraining the defendants from the use of the plaintiffs' trade-mark. The trade-mark claimed by the plaintiffs consisted of the use of the word "Akron" in designating a cement, or water-lime, manufactured by them near the village of Akron, in the county of Erie and the State of New York. They and their predecessors had used the word "Akron," as a trade-mark to designate the origin and quality of their cement, for over thirteen years before the commencement of this action. The

defendants, who manufactured cement, or water-lime, in Onondaga county, near Syracuse, knowing that the plaintiffs had, for years, used the word "Akron" as a trade-mark to designate the origin and place of manufacturing their cement, in January, 1866, applied the word to designate their cement, by calling it "Akron Cement." The plaintiffs' cement had acquired a wide reputation, and commanded a high price in the market. The court found that the defendants, "for the purpose of increasing their sales, and of availing themselves of the reputation acquired by the water-lime, or cement, manufactured by the plaintiffs, and of securing to themselves a higher price for their own cement, or water-lime, in the market, without the knowledge or consent of the plaintiffs, printed, or caused to be printed, bills containing in large letters, among other things, the word 'Akron,' and have furnished to their agents, and are still furnishing to them, for a like purpose, bills with the said word thereon, to be pasted, and the same have been pasted, on the barrels of cement, or water-lime, furnished by them for sale; and that such cement, or water-lime, was not 'Akron' cement, or water-lime; that the defendants sold, through their agents, such barrels of cement, or water-lime, with the said bills pasted thereon, as and for 'Akron' cement, or water-lime; that the cement, or water-lime, thus sold, was not manufactured at or near Akron. * * * That the use of the word 'Akron,' by the defendants, in the manner above stated, was intended by them to mislead those who had occasion to purchase cement, or water-lime, and tended to injure the plaintiffs by diminishing their sales, and by injuring the reputation of their cement and water-lime in the market."

The defendants were, by the plaintiffs, requested to desist from thus using the word "Akron," but they claimed the right, and threatened to continue to use the same. Other facts appear in the opinion.

The court, at the Special Term, decided that the plaintiffs had the right, to the exclusion of the defendants, to use the word "Akron," to designate their cement, or water-lime, as

and for their trade-mark, and that the plaintiffs were entitled to a perpetual injunction, restraining the defendants from using the same, and directed judgment to be entered accordingly.

The defendants excepted to this decision.

The plaintiffs entered judgment in accordance with the decision of the court.

*John Ganson* for the respondents. The name of a place may be adopted and used as a trade-mark. (*Cong. Spring Co.* v. *High Rock Spring Co.*, 45 N. Y., 291, 295, 298; *Seixo* v. *Provezende*, 1 Chy. Apps. [L. R.], 192; *Newman* v. *Alvord*, 49 Barb., 597; *Dixon Co.* v. *Guggenheim*, 2 Brews. [Penn.], 335.) Defendants' adoption and use of the word "Akron" in their business was an infringement upon plaintiff's trade-mark. (*Amoskeag Manuf. Co.* v. *Spears*, 2 Sandf., 599, 605, 607; *Farnia* v. *Silverlock*, 39 Eng. L. and Eq., 514; *Collins Co.* v. *Cohen*, 3 Kay & J., 428; *Cong. Spring Co.* v. *High Rock S. Co.*, 45 N. Y., 291; *Krott* v. *Morgan*, 2 Kern., 213; 17 [N. S., 8] Am. Law Reg., 402, note, p. 408; *Taylor* v. *Taylor*, 23 Eng. L. and Eq., 281; *Croft* v. *Day*, 7 Beav., 74.) Plaintiffs have acquired a right to use the word "Akron" in designating their cement to the exclusion of defendants. (S. L. 1862, 513, 514; *Bloss* v. *Bloomer*, 23 Barb., 604; S. L. 1863, chap. 209, §§ 1, 2.)

*Amasa J. Parker* for the appellants. The name of a place can never be appropriated and used as a trade-mark. (*Wolfe* v. *Goulard*, 18 How. Pr., 64; Upton on Trade-Marks, 29; *Burgess* v. *Burgess*, 17 Eng. L. and Eq., 257; *Brooklyn White Lead Co.* v. *Masury*, 25 Barb., 416; *Candee* v. *Deere*, 10 Am. Law R. [N. S.], 694, 707; *Wetherspoon* v. *Carril*, 23 Law Times R., 443.) To entitle a person to use as his own any particular word as a trade-mark, his right thereto must be exclusive as against all persons. (*Amoskeag Manuf. Co.* v. *Spear*, 2 Sandf., 559; *Corwin et al.* v. *Daly*, MS. op., cited Upton on T. M., 187, 209, 48, 23, 99; *Stokes* v. *Landgruff*,

17 Barb., 611; *Partness* v. *March*, 2 Barb. Chy., 104; *Furness* v. *Merchant*, 4 Abb., 157; *Candee* v. *Deere*, 10 Am. Law R. [N. S.], 707; *Farmer* v. *Silverlock*, 6 De Gex, M. & G., 214; *Perry* v. *Turefitt*, 6 Beav., 66; *Fitridge* v. *Wells*, 13 How. Pr. R., 385; *Partridge* v. *Menck*, 2 Barb. Chy., 101; *PidJing* v. *How*, 8 Simons, 477; *Town* v. *Stetson*, 5 Abb. Pr. [N. S.], 218.) A trade-mark is protected only when it denotes the origin or ownership of the goods. (Upton on T. M., 26, 98, 99; *Collins* v. *Cowen*, 3 Kay & J., 428, and cases above cited.) Defendants did not attempt to perpetrate a fraud. (*Welch* v. *Knott*, 4 Kay & J., 747; *Partridge* v. *March*, 2 Sandf. Chy., 622; *Merrimac Manuf. Co.* v. *Garner*, 2 E. D. Smith, 387; *Clark* v. *Clark*, 25 Barb., 79; Upton on T. M., 203, 214.)

EARL, C.  The cement manufactured by the plaintiffs was made from stone taken from certain quarries located in the town of Newstead, in Erie county, near the village of Akron.  While they did not own all the quarries, and there were others, therefore, who could manufacture the same kind of cement, it does not appear that any one else was engaged at the time of the commencement of this suit in manufacturing cement from these stone, or in selling any cement manufactured from them, as Akron cement.  They and those to whom they succeeded had for many years been engaged in manufacturing this cement and selling the same as Akron cement, and it was known in market by that name.  Their barrels were labeled as follows: "Newman's Akron Cement Co., manufactured at Akron, N. Y.  The hydralic cement, known as the Akron Water-Lime."  The defendants labeled their barrels as follows: " Alvord's Onondaga Akron Cement or Water-Lime, manufactured at Syracuse, New York."  They placed the word " Akron " upon their label for the purpose of increasing their sales and availing themselves of the reputation acquired by plaintiffs' cement.  The label was calculated to induce ordinary buyers to believe that they were purchasing either plaintiffs' cement, or cement of the same kind and value.

Such buyers would not generally know that Akron and Syracuse were places at a large distance apart, and if they did know this, they might suppose that the stone were transported to Syracuse and there manufactured into cement.

Hence, it cannot be doubted that the plaintiffs are entitled to the relief which they demand, if they have the right as against the defendants to the exclusive use of the word "Akron" as their trade-mark. The question is not before us, and it is not necessary for us to determine, whether any other owner of a portion of the same quarries could not manufacture cement and label it Akron cement. The sole question to be determined is whether the plaintiffs, who were the only persons engaged in manufacturing and selling the real Akron cement, which is known and has a reputation in market as such, can be protected in the use of the word "Akron" against the defendants, who used it to defraud the plaintiffs and deceive the public.

It is objected that the plaintiffs could not adopt the name of a place as a trade-mark; a trade-mark is properly defined by Upton (Upton's Trade-Marks, 9) as "the name, symbol, figure, letter, form or device adopted and used by a manufacturer or merchant, in order to designate the goods that he manufactures or sells, and distinguish them from those manufactured or sold by another, to the end that they may be known in the market as his, and thus enable him to secure such profits as result from a reputation for superior skill, industry or enterprise." The trade-mark must be used to indicate not the quality, but the origin or ownership of the article to which it is attached. It may be any sign, mark, symbol, word or words, which others have not an equal right to employ for the same purpose. I can perceive no reason why it may not be the name of a place. Suppose one owns the only coal mine situated in a town or near a city, and he names his coal after the town or city, and it becomes known as such in the market, why may not such name become his trade-mark? The same name could not be truly applied to coal obtained from any other place.

In *Congress and Empire Spring Company* v. *High Rock Congress Spring Company* (45 N. Y., 291), the plaintiffs claimed " Congress water," the name of a peculiar mineral water found at Saratoga, as their trade-mark; and their claim was upheld because the words used indicated the origin of the water; and as the plaintiffs owned the sole place where the water was found, they were held to be entitled to that advantage, and to be protected in its enjoyment. It was held that their rights were invaded when defendants attempted to sell mineral water under the same name; thus representing that it had the same origin, and defrauding the plaintiffs and deceiving the public. Suppose the plaintiffs had owned the only mineral spring at Saratoga, and they had named their water and adopted as their trade-mark " Saratoga Mineral Water," can it be doubted, within the principles laid down by the court, and for the precise reasons, that the same relief would have been granted to them against the defendants labeling water procured at some other locality by the same name?

In the case of *Seixo* v. *Provezende* (1 Chancery Appeal Cases [Law Reports], 192) the plaintiff was protected in the use of the word " Seixo " as a trade-mark for wines made by him in Spain against the defendant, who applied to his wine the trade-mark " Seixo De Cina;" and yet Seixo was the name for a district of country where the wine was made, and the defendant had a vineyard in the same district.

In *Brooklyn White Lead Co.* v. *Masury* (25 Barb., 417) it appeared that the plaintiffs and defendant were manufacturers of white lead at Brooklyn, and hence the court held that neither party could acquire the exclusive right as against the other to the use of the words " Brooklyn White Lead" as a trade-mark. This case would be in point if, in the case under consideration, the defendants' cement had been manufactured from stone taken from the Akron quarries, so that they could truthfully have called it Akron cement.

I can, therefore, see no reason why the plaintiffs could not adopt and use the word " Akron " as their trade-mark simply

because it was the name of a place.   But it is further claimed
that the plaintiffs cannot be protected in this trade-mark
because it had been used by others who had made cement
from the same quarries.   I will assume (although it is not
necessary to decide the point in this case) that other persons,
who owned quarries at or near Akron, had the right also to
call their cement Akron cement; and yet it is quite clear
that the plaintiffs, upon the facts in this case, are entitled to
protection against the defendants.   It is sometimes said, in the
cases to which our attention has been called, that the claim-
ant of a trade-mark must have the exclusive right to it.
This form of expression, I apprehend, is not strictly accurate.
The right must be exclusive as against the defendant.   It is
generally sufficient, in such cases, if the plaintiff has the right
and the defendant has not the right to use it.   The principle
upon which the relief is granted is that the defendant shall not
be permitted, by the adoption of a trade-mark which is untrue
and deceptive, to sell his own goods as the goods of the plain-
tiff, thus injuring the plaintiff and defrauding the public.
Here the plaintiffs had given a reputation to the Akron
cement in market.   They had always been its principal
manufacturers and sellers, and, at the time of the commence-
ment of the suit, the sole parties who could be injured by the
fraudulent use of the trade-mark by the defendants, and, hence,
they are clearly entitled to the protection which they seek.

In *Lee* v. *Haley* (5 Chy. App. Cas. [Law R.], 155), the
plaintiffs had, for a series of years, carried on business as coal
dealers in Pall Mall, London, under the name of "The
Guinea Coal Company," and they were frequently called
"The Pall Mall Guinea Coal Company."   The defendant,
who had been their manager, finally set up a business in the
same street under the same style of "The Pall Mall Guinea
Coal Company," and while it appeared that there were other
Guinea coal companies in London, so that the plaintiffs did
not have the exclusive right to the use of the trade-mark,
"Guinea Coal Company," yet the court held that they were
entitled, as against the defendant, to be protected in the use

of the name.  Lord Justice GIFFORD, writing the opinion of the court, says: "I quite agree that the plaintiffs have no property in the name; but the principle, upon which the cases on this subject proceed, is, not that there is property in the word, but that it is a fraud on a person who has established a trade and carries it on under a given name, that some other person should assume the same name, or the same name with a slight alteration, in such a way as to induce persons to deal with him in the belief that they are dealing with the person who has given a reputation to the name." This case goes further than it is necessary to carry the rule in the case before us, because the words " Pall Mall Guinea Coal Company " could be truthfully used by both parties.  They both sold coal in Pall Mall for a guinea a ton.  But here the defendants could not truthfully call their cement Akron cement, and they had no shadow of right to use the name. Their use of it was a fraud upon the plaintiffs, and upon no other manufacturers.

These views are not in conflict with the case of *The President, Managers and Company of the Delaware and Hudson Canal Company* v. *Clark,* recently decided in the Supreme Court of the United States, not yet reported.  In that case the plaintiffs claimed the word "Lackawanna," as applied to coal, as their trade-mark, and sought to restrain the defendant from the use of the same word, as applied to his coal. It appeared that the coal of both parties came from mines located in a region of country called "The Lackawanna Valley," and that it did not differ in its nature or quality. It also appeared that the coal taken from that region was and had for years been known in the trade as Lackawanna coal, and that the defendant did not use the word Lackawanna to induce the public to believe that his coal was the plaintiffs' or in any way to deceive the public or defraud the plaintiffs It was a case where the defendant could truthfully and honestly designate and sell his coal as Lackawanna coal, and hence, it was held that he in no way invaded any right of the plaintiffs.  It might have been an authority here if the

defendants had manufactured their cement from stone taken from the Akron quarries, and could thus honestly and truthfully have designated their cement as Akron Cement. It is not an authority for the broad rule claimed by the learned counsel for the appellant, that the name of a place can never be appropriated as a trade-mark. That the name of a place can thus be appropriated, has, during the present year, been decided on appeal in the House of Lords, in the case of *Wotherspoon* v. *Currie*, reported in 5 House of Lords, English and Irish Appeals (Law Reports), 508. In that case the plaintiffs, and those to whom they succeeded, had formerly carried on the business of starchmakers at Glenfield, near Paisley, and their starch had become known in market and was sold as Glenfield starch. After the plaintiffs' starch had become thus known, they removed their starch-works from Glenfield to another small place near Paisley, and there continued to manufacture their starch, which continued to be known and sold as Glenfield starch. The defendant afterward commenced to manufacture starch at Glenfield, and placed on the labels upon his packages of starch the word Glenfield, and sold his starch as Glenfield starch. He claimed the right to do this because his starch was made at Glenfield and the plaintiffs' was not. But it appeared that he used the word Glenfield for a fraudulent purpose; to increase his sales at the expense of the plaintiffs, by inducing the public to purchase his starch under the belief that it was the starch made by the plaintiffs, and it was held that the plaintiffs were entitled to be protected in the use of the word as their trademark. The defendant could truthfully apply the word Glenfield to his starch, but he was restrained because he applied it with a fraudulent and dishonest purpose. In the case at bar the defendants not only used the word Akron, as applied to their cement, for a fraudulent and dishonest purpose, but

there is the additional element that they could not truthfully use it, and, hence, for more reason than in the case last cited, they ought to be restrained.

The judgment should be affirmed, with costs.

All concur.

Judgment affirmed.