EMILY WAGNER, APPELLANT, *v.* THOMAS J. DALY, RESPONDENT.

*Trade-mark in a cigar-box label — want of novelty and invention.*

Wagner, a cigar manufacturer, sought to restrain the use by Daly, also a cigar manufacturer, of a cigar-box label, consisting of a picture of a pug dog, with the words "Pug Cigars," on the ground that it was an infringement of Wagner's right to a trade-mark, acquired by prior use, in a label consisting of the same picture with the words "Wagner's Pug." It appeared that Wagner procured his labels from a label manufacturer, who had introduced the label, originally with the words "Friend Pug," in which form he had offered it to the trade generally, and had sold at least one lot of labels to a cigar-box manufacturer before the sale to Wagner of his labels.

*Held,* that Wagner was not the inventor of the word and symbol in question, nor the originator of their use as a cigar-box label, nor was such use by him new, and, therefore, that he was not entitled to their exclusive use as a trade-mark. (MAYHAM, P. J., dissenting.)

APPEAL by the plaintiff, Emily Wagner, from a judgment of the Supreme Court, in favor of the defendant, entered in the office of the clerk of Montgomery county on the 19th day of September,

1892, on the decision of the court dismissing the complaint, rendered on a trial by the court without a jury at the Montgomery Circuit, in an action brought to restrain the infringement of a trade-mark and for damages.

*Charles S. Nisbet* and *Harvey Book,* for the appellant.

*Thomas A. Murray* and *Z. S. Westbrook,* for the respondent.

PUTNAM, J.:

In *Schneider* v. *Williams* (44 N. J. Eq. [17 Stewart], 391), to which we are referred by appellant, it is held that one, to acquire title to a trade-mark, "must adopt some mark not in use to distinguish goods of the same class or kind already on the market belonging to another trader." In *Van Beil* v. *Prescott* (82 N. Y., 630) it is held that "to make an exclusive right to use a name or symbol as a trademark, such use *must be new;* if ever before used as applicable to a like article, it cannot be exclusively appropriated." In *Selchow et al.* v. *Baker et al.* (93 N. Y., 59) it is determined that "where a manufacturer has invented *a new name* consisting either of a new word or words in common use, which he has applied *for the first time* to his own manufacture, * * * he is entitled to be protected."

Plaintiff was not the inventor of the alleged trade-mark in question. She commenced using it on November 7, 1883. It was invented by Wischt & Smidt, engravers, on August 14, 1883, as a cigar label. On September 11, 1883, said firm sent samples of said label all over the country to the cigar trade. They sold the first labels to plaintiff on October 19, 1883, but prior to that time had sold ten labels to one Pople, a cigar-box manufacturer, of Newark. It also appeared by the evidence of the witness Wischt that from the time said firm originated this label and offered it to the trade, they had sold quite a number of such labels to other parties or other cigar-box makers for use in the cigar trade.

Hence, while plaintiff was not the inventor of the word and symbol in question, neither was she the originator of such word and symbol as a cigar-box label. When she commenced using them they were on sale to the cigar trade in the country as cigar labels, and at least one lot of such labels had been sold to a cigar-box manufacturer. Therefore, under the case of *Van Beil* v. *Prescott* (*supra*) I do not think it appears that plaintiff's use of the symbol and word in question as a

cigar-box label *was new.* They were used before her adoption of them as applicable to a like article. Therefore, the plaintiff fails to make out a case showing herself entitled to the excl ve use of the said alleged trade-mark.

The plaintiff, in fact, in this action seeks to prevent the inventors and originators of said device from having the benefit of their invention. Of course, if purchasers from Wischt & Smidt of the labels in question cannot use them, the firm are prevented from a further sale thereof.

I think the trial court made a proper disposition of the case, and that the judgment of the court below should be affirmed, with costs.

HERRICK, J., concurred.

MAYHAM, P. J. (dissenting) :

This action was prosecuted by the plaintiff, a cigar manufacturer, against the defendant, also a cigar manufacturer, for an alleged infringement by the defendant of plaintiff's trade-mark, used in her business as a cigarmaker.

The device consisted of the picture of the head of a pug dog, on which was printed the words "Wagner's Pug," pasted upon plaintiff's cigar boxes, and the alleged infringement consisted of a similar picture, on which were the printed words "Pug Cigars," which defendant pasted upon his cigar boxes.

The proof showed that the plaintiff first used this device or brand upon her cigar boxes on the 7th of November, 1883, and that her sales of that brand of cigars increased from 7,000 in that year yearly, until in 1891, her sales reached the sum of 225,000. The defendant commenced using this device, with the words "Pug Cigars," on his boxes in February, 1892. The proof shows, and the trial judge found, that one Sammons, a cigar-box manufacturer, supplied the plaintiff with cigar boxes from 1883 to the time of the commencement of this action, and that in October of that year, he procured from Wischt & Smidt, manufacturers of cigar-box labels, samples, among which was one, in all respects, like the one used by plaintiff, except that over the device was printed the words "Friend Pug," and that, at the request of the plaintiff, Sammons procured of Wischt & Smidt the same kind and device, except that in the place of "Friend," the word "Wagner's" was substituted, and this device,

with the words " Wagner's Pug," was pasted on the boxes sold by Sammons to plaintiff, and by her filled with cigars and sold to her customers.

The testimony also showed that Wischt & Smidt originated this device in August, 1883, with the words " Friend Pug," printed over the picture, and on the eleventh of September of that year, sent samples of the same to cigar dealers all over the country, and sold some to customers before the sale in October, 1883, to Sammons, and that the business of Wischt & Smidt was that of engravers, lithographers and color printers and publishers of cigar labels, and they had sold several millions of the " Friend Pug " label, but had never sold any of the " Wagner Pug " labels, except to Mrs. Wagner's box maker.

The defendant commenced the use of this device with the words " Pug Cigars " about the year 1888, and his box maker procured his label from Wischt & Smidt, the same lithographers from whom plaintiff's box makers procured her lable.   Wischt & Smidt labels were not registered or copyrighted under the United States statutes and the plaintiff had never registered her device as her trade-mark.

Two leading propositions must be established by the plaintiff before she is entitled to maintain this action.

*First.* That she had so far used and appropriated this device as to constitute it her trade-mark so as to give her the exclusive right to the use of the same.

*Second.* That the use by the defendant of the device, which he placed upon his boxes, was such an adoption and use of the plaintiff's device as to constitute an unlawful interference or infringement of the plaintiff's trade-mark.

The legislature of this State, in the adoption of the Penal Code, have furnished a recent and, I think, correct definition of a trade-mark, which may be safely followed in the determination of the civil rights and remedies of parties upon that subject.

Section 366 defines it as follows : " A trade-mark is a mark used to indicate the maker, owner or seller of an article of merchandise and includes, among other things, any name of a person or corporation or any letter, word, device, emblem, seal, stamp, brand, wrapper, ticket, stopper, label or other mark lawfully adopted by him, and usually affixed to an article of merchandise to denote the same was

imported, manufactured, produced, sold, compounded, bottled, packed or otherwise prepared by him." \* \* \*

To acquire title to a trade-mark, as above defined, the person using and adopting the same must adopt some mark or device, not in use, to designate goods of the same class or kind already on the market belonging to some other trader. He must also apply his mark to some article of merchandise or traffic and must put his article thus marked, with his intended trade-mark, on the market. (*Schneider* v. *Williams*, 44 N. J. Eq., 391.)

It does not seem to be necessary that the plaintiff to acquire property rights in a trade-mark should describe the device adopted by her on the face of the label, as her trade-mark; adopting it, attaching it to specific articles of merchandise and putting the merchandise on the market for sale is a sufficient notice to the public to give exclusive right to its use as to the particular kind of merchandise to which it is attached.

But in order to establish such property right the plaintiff must show that he was the first to establish and use the device attached to the particular kind of goods which he has put upon the market.

It must, in the language of Upton on Trade-Marks, be "the name, symbol, figure, letter, form or device adopted and used by a manufacturer or merchant in order to designate the goods that he manufactures or sells and distinguish them from those manufactured and sold by another ; to the end that they may be known in the market as his, and thus enable him to secure such profits as result from a reputation for superior skill, industry or enterprise." (Upton's Trade-Marks, 9.) In *Newman* v. *Alvord* (51 N. Y., 193) EARL, J., says. "The trade-mark must be used to indicate, not the quality, but the origin or ownership of the article to which it is attached. It may be any sign, mark, symbol, word or words which others have not an equal right to employ for the same purpose."

The long and uniform use made by the plaintiff of this device upon the boxes in which she sold her cigars to the general public was, we think, sufficient evidence of her adoption of this device as her trade-mark and established her title to the same, provided she had such priority of adoption, use and sale of the same as is required by law to vest in her a property right in it as a trade-mark.

· But it is insisted by the learned counsel for the respondent that the plaintiff was not the first to adopt this device, and that, therefore, the plaintiff acquired by its use no exclusive right to the same.

It is true that the evidence discloses that the lithographer and originators of the pug dog design had sold to one person, for what use or purpose does not appear, some of these lithographs, differing only from plaintiff's in having the word "Friend" in the place of "Wagner's" on them, but it does not appear that they were used by the purchaser as labels on cigar boxes, which alone would make their sale and use such a prior use as to deprive the plaintiff of the right of adoption and use upon cigar boxes as her trade-mark. Nor was the printing and sale of this device by the lithographers any adoption of the same by them as a trade-mark, and their sale of the same to plaintiff's box makers imposed no restraint upon the plaintiff which prevented her from adopting it, provided there had been no prior adoption of the same by some other person as a trade-mark for the sale of cigars.

This being so, the device adopted by the plaintiff, and pasted upon her cigar boxes, became her trade-mark, and any unauthorized use of the same by another was a violation of her property rights for which an action would lie.

The remaining question is, was the device used by the defendant an infringement of the plaintiff's trade-mark; or, in other words, was it such an imitation as to mislead the public into the belief that the cigar boxes on which it was placed bore the trade-mark of the plaintiff, so as likely to promote the sale of the defendant's cigars under the mistaken belief that they were of the plaintiff's manufacture.

To constitute a violation of the plaintiff's right in the unauthorized use by another of her trade-mark, it is not essential that the device so used, is, in all respects, a *fac simile* of the plaintiff's trade-mark; a counterfeit or imitation so nearly resembling the genuine as to mislead, with the apparent object of producing, and likely to produce upon the mind of the purchaser the belief that the article offered for sale bears the trade-mark of the plaintiff, may produce all the injurious consequences to the plaintiff the same as the use of the device itself, or an exact *fac simile.*

Upon this subject we may again refer, with profit, to the legislative definition of a counterfeit of a trade-mark.

A criminal counterfeit of a trade-mark is defined by the Penal Code, section 368, as follows: "An 'imitation of a trade-mark' is that which so far resembles a genuine trade-mark as to be likely to induce the belief that it is genuine, whether by the use of words or letters, similar in appearance or in sound, or by any sign, device or other means whatsoever."

In *Clark* v. *Clark* (25 Barb., 76) the plaintiff's genuine trade-mark on spool cotton consisted of four concentric circles on the end of the spool, the inner one in gold; the next in silver; the next in black with the letters in gold; the next in silver; the whole bound in two concentric black lines. Within the inner circle was the number, in the next were the letters and words "J. Clark, Jr, & Co.," at the top and at the bottom, "Mile End Glasgow." The imitation by the defendant, which was alleged to be in violation of the plaintiff's right, consisted of spool cotton with concentric circles on the end of the spool precisely like that of plaintiff, and the number in the middle, and at the top of the circle the words "Clark & Co," and at the bottom of the circle were words in the same position as in the plaintiff's, but the words there were "Seed Hill Paisley," differing entirely from those in a similar position on plaintiff's spools.

Both spools contained the same name as agent, and the court held that the defendant, by the use of such partial imitation, had violated the plaintiff's rights in his trade-mark, and MITCHELL, J., in delivering the opinion of this court in New York General Term, DAVIS and ROSEVELT concurring, uses this language: "The effect of this imitation must be, that all, except very cautious purchasers would be deceived."

It will be observed that the difference between the plaintiff's trade-mark in that case was more marked than in this case at bar.

In the case before us the pug dog picture is the leading and marked characteristic of the plaintiff's trade-mark. The whole lithograph of both labels are exactly alike, one a reprint of the other, except that in the place of the words "Wagner's" on the plaintiff's the word "Pug" appears on the defendant's.

If so slight a difference can relieve the defendant from all responsibility for the use of another's trade-mark, the law upon the subject of trade-marks will serve no useful purpose and one party may avail

himself of and appropriate to his own use the well-earned reputation of another, with all the profits and advantages which the law adjudges to be the property of the latter.

We think that the plaintiff made out a valid cause of action against the defendant upon the evidence and for that reason the judgment should be reversed and a new trial ordered, costs to abide the event.

Judgment affirmed, with costs.