## LA REPUBLIQUE FRANCAISE et al. v. SCHULTZ.

(Circuit Court, S. D. New York. July 3, 1893.)

1. TRADE NAMES—INFRINGEMENT—PLEADING.
In a suit to enjoin the use of the word "Vichy" by defendant in connection with mineral waters, where complainant alleges the various transfers by which it acquired title to certain springs in France, from which it has long obtained mineral waters for sale under that name, it is not necessary to make profert of the instruments of title, for the question of title is not in issue, and the gist of the suit is a tortious act.

2. SAME—RIGHT TO USE GEOGRAPHICAL NAME—MINERAL WATERS.
A right may be acquired to use a geographical name as a trade name in connection with mineral waters derived from springs in that locality by persons who own all of such springs, and the use of such name by others who obtain their waters elsewhere will be enjoined.

3. SAME—WHAT CONSTITUTES—INDUSTRIAL PROPERTY TREATY WITH FRANCE.
The word "Vichy," used in connection with mineral waters, and derived from the locality in France where the waters are obtained, is a trade name, or "nom commercial," within the meaning of the industrial property treaty with France of 1883, art. 6, (25 Stat. 1376,) and as such is entitled to protection in the United States, though it has not been deposited as required by the treaty in the case of trade-marks.

4. TREATIES—IMPLIED REPEAL.
The treaty between the United States and France of April 16, 1869, was impliedly repealed by the industrial property treaty of 1883, (25 Stat. 1372,) since the latter treaty covered the whole subject-matter of the former one.

In Equity. Suit to enjoin the use of a trade name. On demurrer to the bill. Overruled.

Jones & Govin, (Edward K. Jones, of counsel,) for complainants.

Briesen & Knauth, (Arthur v. Briesen, of counsel,) for defendant, in support of the first ground of the demurrer cited the following authorities:

Steph. Pl. rule 7, p. 436; Post v. Hardware Co., 25 Fed. Rep. 905; Story, Eq. Pl. 23; Pitts v. Whitman, 2 Robb. Pat. Cas. 189, 195; Wilder v. McCormick, 2 Blatchf. 31, 35; McMillin v. Transportation Co., 18 Fed. Rep. 260; Kay v. Marshall, 1 Mylne & C. 373; Westhead v. Keene, 1 Beav. 287; Marshall v. Turnbull, 34 Fed. Rep. 827, 828.

TOWNSEND, District Judge. This case is presented by a demurrer to a bill in equity for an injunction against the use of the word "Vichy" by defendant. The bill alleges that the complainants, the Republic of France and the Compagnie Fermiere de l'Etablissement Thermal de Vichy, hereafter called the Vichy company, are respectively owner and lessee of various mineral springs in and about the town of Vichy, the waters of which are known under the name of "Vichy" waters; that the reputation of these waters for their medicinal qualities is very great throughout the United States; that the name "Vichy," as applied thereto, is of great value to the complainants, etc.; that they have the exclusive title to said springs, and to the use of said name in connection therewith. The bill further alleges that in the year 1344 one Jean, Lord of Vichy, being then the owner of certain springs in France, sold the same to one Pierre, Duke of Bourbon; that afterwards, in 1531, the then king of France, Francis the First, confiscated the property of the house of Bourbon; that thereupon, and afterwards, the crown of France became the owner of said mineral springs, and remained such until 1790, when said springs were united to the public domain of the state of France; that in June, 1853, the French empire, by imperial authority of Napoleon the Third, and by its several ministers and departments, leased and conceded to a certain firm of Lebobe, Callou & Co., of the city of Paris and of the town of Vichy, all the right and privilege of taking the waters from said springs, and the preparation and sale thereof, which lease was for the term of 33 years, to wit, until 1886. The bill further alleges that the Vichy Company was duly formed and established according to French law, and has succeeded to the rights of said prior lessees, and acquired all the property, rights, privileges, and franchises from said prior owner of the lease, and that by a certain agreement duly entered into between the minister of public works, commerce, and agriculture and the said Vichy Company, which agreement is dated April, 1864, and which was sanctioned by the imperial authority, the lease was extended until 1904. The bill further alleges that, on September 4, 1870, the empire of France was overthrown, and that the rights, property, and privileges of said empire, including its property in and title to said Vichy springs, devolved upon the complainant, the French republic, whereupon it duly became, and has ever since remained, the sole and exclusive owner of the aforesaid mineral springs and thermal establishment at Vichy, and entitled, subject to the terms of the said lease, to the exclusive property in and to the use and enjoyment of the same, including the right to designate and brand the said mineral waters by the name "Vichy."

The first ground of demurrer assigned is as follows:

"That the said complainants have not in their said bill of complaint made profert of the instruments and documents under which they allege title or any proprietary or leasehold rights to the mineral springs mentioned in the bill, nor of the agreements in relation thereto that are mentioned in the bill of complaint, nor of the decrees set up in the bill of complaint, nor of the

charter or certificate of incorporation of the complainant La Compagnie Fermiere de l'Etablissement Thermal de Vichy."

In support of this demurrer defendant cites certain text-books and cases. An examination of them shows that they do not apply to this case. Several of the citations state the rule in actions at law. The bills in equity referred to were, with one exception, for the alleged infringement of patents. In such cases the patent itself is the foundation of the statutory right of the complainant. It is therefore necessary for him either to give a full description of the patented invention, or to refer to, and make profert of, the patent. Post v. Hardware Co., 25 Fed. Rep. 905. At common law, where title was in issue, and depended upon a deed, the party was bound to make profert thereof. But no such profert was necessary in a case where the title was mere inducement to an action, as in trespass or case. Gould, Pl. c. 8, § 47; Steph. Pl. 381. This suit is brought to restrain an alleged injury to an incorporeal right. The gist of the suit is the tortious act. By the demurrer all the material allegations of the bill are admitted,—that the complainant the republic of France and its predecessors have for several hundred years owned these springs; that the complainant the Vichy Company has a lease of the springs, which was extended by imperial authority until 1904, and that the defendant has been and is manufacturing counterfeit waters, without license, to which he applies labels with the word "Vichy," printed thereon, to the great damage of complainants.

The claim of title to the springs is not in issue. It is merely inducement to the alleged infringement, the actual and threatened wrong, which is the foundation of the action. In equity pleadings the party should allege the facts with sufficient fullness, so that the court, assuming them to be true, can collect that he has title, and can make the facts the basis of a decree if the case be admitted by the answer. 6 Amer. & Eng. Enc. Law, 756; Heard, Eq. Pl. 28; 1 Daniell, Ch. Pl. & Pr. § 361; Webber v. Gage, 39 N. H. 182. "The nature of a conveyance or alienation should be stated according to its legal effect, rather than its form of words." 1 Daniell, Ch. Pl. & Pr. § 363; Story, Eq. Pl. § 241. If the defendant can show that any of the instruments referred to are material, or essential to the preparation of his defense, he can apply for the production of such instruments in accordance with the usual practice in chancery.

The second ground of demurrer assigned is as follows:

"That the said complainants have not in their said bill of complaint disclosed such a compliance with the acts of congress and the treaties between the United States and the French republic as entitles them to prosecute their said bill of complaint against this defendant in this court, and have therefore failed to show the jurisdiction of this court."

Complainants claim that the word "Vichy" is not a trade-mark, but a trade name, and, as such, protected upon principles analogous to those applied to trade-marks. Although defendant claims that this word is a trade-mark, much of his argument proceeds upon the

theory that it is not a trade-mark. In that event he contends that complainants have failed to show any law under which they are entitled to protection, or any right to the exclusive use of the term. Unless the word "Vichy" is a trade-mark, the complainants are entitled, on the facts alleged in the bill, to an injunction against the use of it by defendant. They allege title to all the mineral springs situated in Vichy, and the exclusive right to the sale of the waters thereof, and that the name "Vichy," as applied to said waters, has become of great value to the complainants, and has always constituted an important and necessary incident and means to the sale of said waters. That such a name may be so used, and will be protected against infringement by other persons not obtaining their product from the same locality, is too well settled for discussion. Canal Co. v. Clark, 13 Wall. 311; Newman v. Alvord, 51 N. Y. 189; Congress & Empire Spring Co. v. High Rock Congress Spring Co., 45 N. Y. 291; Brewing Ass'n v. Piza, 24 Fed. Rep. 149; Apollinaris Co. v. Norrish, 33 Law T. (N. S.) 242. Whether a geographical name may become a trade-mark when adopted as such, where its owner is the owner of the place of origin, and has the monopoly of the vendible product, is perhaps an open question. Browne, Trade-Marks, (2d Ed.) pp. 91, 182, 521; Chemical Co. v. Meyer, 139 U. S. 540, 11 Sup. Ct. Rep. 625; Judge Putnam, in City of Carlsbad v. Tibbetts, 51 Fed. Rep., at page 856, citing cases. But I do not think it necessary to pass upon this question at this time, because the rights of the complainants may be determined by a consideration of the treaties between the United States and the French republic, referred to in the demurrer.

The defendant, claiming that the word "Vichy" is a trade-mark, contends that complainants are not entitled to relief, because they have failed to comply with the provisions of the treaty of April 16, 1869, between the United States and France, or of the general treaty of March 20, 1883, between certain countries, including the United States and France, for the protection of industrial property. I shall not consider the treaty of 1869, because, as the treaty of 1883 covers the whole subject-matter of the former treaty, it may be considered as impliedly repealed. Murdock v. City of Memphis, 20 Wall. 617; King v. Cornell, 106 U. S. 395, 1 Sup. Ct. Rep. 312. In the industrial property treaty of 1883 these three expressions are used: "Marque de fabrique," translated "trade-mark;" "marque de commerce," translated "commercial mark;" "nom commercial," translated "commercial name." The treaty provides that "every trade-mark or commercial mark regularly deposited in the country of origin shall be admitted to deposit, and so protected in all the other countries of the Union." 25 Stat. 1376, art. 6. And the final protocol, on page 1380, par. 4, is as follows:

"Paragraph 1, of article 6, is to be understood in the sense that no trade or commercial mark shall be excluded from protection, in one of the states of the Union, by the mere fact that it may not satisfy, in respect to the signs composing it, the conditions of the laws of this state, provided that it does

satisfy, in this regard, the laws of the country of origin, and that it has been in this latter country, duly deposited. Saving this exception which concerns only the form of the mark, and under reservation of the provisions of the other articles of the convention, the domestic legislation of each of the states shall receive its due application."

## Article 8 of the treaty is as follows:

"The commercial name shall be protected in all the countries of the Union, without obligation of deposit, whether it forms part, or not, of a trade or commercial mark."

The question raised by this demurrer is whether the word "Vichy" is a trade-mark or commercial mark, in which case it is claimed that it can receive no protection without registration, or a commercial name, as to which no such obligation exists. It is not alleged in the complaint that the word "Vichy" has been registered. Whether such registry is required in the case of a trade or commercial mark it is unnecessary to consider. It is only necessary to inquire whether the word "Vichy" is or is not a nom commercial, or commercial name. As the two terms, "commercial mark" and "commercial name," used in the treaty, are translations of terms used in the civil law of France, it becomes necessary to examine their meaning in said system, in order to understand the distinction between them. The distinction between a trade-mark and a commercial mark is pointed out by Pouillet in his work on Marques de Fabrique, (section 6,) from which I translate as follows:

"A trade-mark is not a commercial mark, and it is with reason that the law mentions both. The trade-mark is especially or peculiarly the mark of the manufacturer, of him who creates the product, who manufactures it. The commercial mark is that of the dealer, of him who, receiving the product of the manufacturer, sells it, in his turn, to the consumer."

## And again, in section 63:

"A name of a town, or more generally a name of a locality, may, like an ancestral name, serve as a trade-mark; yet here still it is on condition that the name shall be presented under a distinct, special form, always the same. It is this peculiar expression which constitutes the mark, and not the name taken separately and for itself."

It will thus be seen that our word "trade-mark" comprehends both the marque de fabrique and marque de commerce of France. Browne, Trade-Marks, § 85.

Under the title "Noms Commercial," Pouillet divides the various classes of commercial names into the general heads of names of manufacturers and names of localities. He defines the commercial name, as follows: Section 374: "The commercial name is the name of the individual, or any name which is the property of a merchant, without reference to its use as a mark, or trade-mark, in a distinctive form. * * * It is the name considered as the accessory of the business, as the 'pavillon de la merchandise,'" which I understand to mean "sign" or "brand" or "standard" of the goods. He adds: "M. Gastambide says, speaking of the name from a commercial point of view, 'The name will be for us a mere means of securing good will.'" Under sections 394-411 of "Noms Commercial" the author includes names of places, and

discusses fully the rights of parties under the law of France, who claim the exclusive use of a name of a locality, including owners of mineral waters or springs. It therefore appears that the name "Vichy" is a commercial name, and, as such, is protected under the industrial property treaty, without obligation of deposit, whether it does or does not form part. of a trade or commercial mark.

The demurrer is overruled.