JOHN P. HIER et al., Appellants, *v.* ABRAHAM ABRAHAMS et al., Respondents.

Trade-marks may consist of pictures, symbols, or a peculiar form or fashion of label, or they may consist simply of a word or words.

Where the trade-mark is of the first kind, to constitute an infringement there must be such an imitation as to amount to a false representation, liable to deceive the public.

Where, however, the trade-mark consists of a word, it continues to be the distinguishing mark of the manufacture to which it is applied, in whatever form it is printed or represented; and its use by another, in any form, applied to similar articles, is unlawful and may be restrained.

The use of the word by another is not justified, although used in connection with different words from those in connection with which it is used by the party who has appropriated it as a trade-mark.

To entitle a party to restrain another from continuing the unlawful use of his trade-mark, it is not essential to show an actual intent to defraud.

Nor is it essential that the party shall first establish a legal right to the trade-mark in an action at law.

Plaintiffs for three years before the commencement of this action had adopted and used the word "Pride" as a trade-mark in the manufacture and sale of, and to designate their cigars. Defendants, with knowledge of this, used the same word on the labels and boxes of cigars manufactured by them. *Held,* that said word, as applied to cigars, was arbitrary, not descriptive of the article, and one which could lawfully be appropriated as a trade-mark; and that plaintiffs were entitled to an injunction restraining its use by defendants.

Also, *held,* that as the infringement charged was the appropriation of a word, not an imitation of a symbol or label, it was no defense that defendants' labels did not resemble those of plaintiffs.

(Argued September 29, 1880; decided November 16, 1880.)

APPEAL from order of the General Term of the Supreme Court, in the fourth judicial department, reversing a judgment in favor of plaintiffs, entered upon a decision of the court on trial at Special Term, and granting a new trial.

This action was brought to restrain the defendants from infringing upon plaintiffs' alleged right to the use of the word "Pride" as a trade-mark, and for damages, etc.

The facts are set forth sufficiently in the opinion.

*John C. Hunt* for appellants. In equity, aside from the statute, plaintiffs are entitled to the relief asked for. (4 Abb. [N. S.] 410; 48 N. Y. 374; 61 id. 226; 2 Daly, 521; 49 Barb. 588; 51 N. Y. 189; 45 id. 291; 1 Weekly Dig. 529; 8 id. 514; 7 Abb. N. C. 17; 21 Alb. Law Jour. 340; 5 Weekly Dig. 283.) Defendants were precluded by admissions in the answer, from denying that plaintiffs had a prior adoption of the word "Pride." (38 N. Y. 28.)

*W. E. Lansing* for respondents. Protection to trade-marks rests upon the principle of preventing a fraudulent appropriation of a name, by which only the products or manufacture of another is designated, and of shielding the public against deception. ( *Wolfe* v. *Burke*, 7 Lans. 155.) To entitle a party to relief, the resemblance must amount to a false representation of the facts indicated by the genuine mark; that is, of the manufacture or proprietorship of the article. (*Popham* v. *Call*, 66 N. Y. 75; *Amoskeag Manuf. Co.* v. *Spear*, 2 Sandf. 599.) Where the points of difference are so prominent and striking as to produce the impression that the articles are different, an action for the injunction cannot be maintained. (*Talcott* v. *Moore*, 6 Hun, 106; 2 Sandf. Ch. 622; Howard's App. Cases, 547; 66 N. Y. 69.) The court is not bound to interfere when ordinary attention will enable purchasers to discriminate between the trade-marks used by different parties. (2 E. D. Smith, 387; 25 Barb. 79; Upton's Trade-marks, 203, 4, 8, 14; 47 N. Y. 104.) A party cannot appropriate a word in common use as his trade-mark so as to exclude others. (18 How. Pr. 64; 7 Lans. 151; 56 N. Y. 115; 57 Barb. 524; 6 Hun, 106; *Caswell* v. *Davis*, 58 N. Y. 234, 235.) A trade-mark is protected only when it denotes the origin and the manufacturer of the article; that is, that the origin and manufacture is in the plaintiff. (17 Barb. 608; 7 id. 226; Upton's Trade-marks, 100, 177; *Fetridge* v. *Wells*, 13 How. 385.) When a trade-mark does indicate the origin and manufacture of the article, the party must have the exclusive right to use the same. (Upton's Trade-marks, 23, 98, 99, 209; 2 Barb. Ch. 103; 2 Sandf. Ch. 599.) Plaintiffs' right being disputed, the application could not be allowed until they had established a legal right in an action at law. (2 Sandf. Ch. 599, 622; 4 Abb. Pr. 166; 13 How. Pr. 342; 2 Barb. Ch. 101: 3 Abb. Pr. 318; 18 Barb. 64; 24 id. 163.)

RAPALLO, J. The plaintiffs, composing the firm of Hier & Aldrich, and being engaged in the business of manufacturing

cigars in the city of Syracuse, claim to have adopted as a trade-mark, to be placed on boxes of cigars manufactured by them, the word " Pride," and that this trade-mark was infringed by the defendants, who were also manufacturers of cigars in the same city, doing business under the firm name of Abrahams & Co.

The trial court found as facts that the plaintiffs had, for three years before the commencement of the action, adopted and used as their trade-mark, in the manufacture and sale of cigars, the word "Pride," and that the defendants, well knowing the adoption and prior use of said word by the plaintiffs, as a trade-mark for cigars manufactured and sold by the plaintiffs to the public, imitated and used the said word "Pride," on the labels and boxes of cigars manufactured and vended by the defendants, and the said defendants, in violation of plaintiffs' rights, did manufacture and sell cigars under the color of such labels, to the public, whereby the said public were deceived into believing that they were purchasing cigars manufactured by the plaintiffs, and plaintiffs were damaged thereby.

The court held that the plaintiffs were entitled to protection in the use of their said trade-mark "Pride," and that the defendants were not entitled to use the same, and awarded a perpetual injunction, with a reference to ascertain the damages if the plaintiffs should apply therefor before the entry of judgment. The application was not made, and judgment was entered for a perpetual injunction simply, with costs.

On appeal to the General Term, this judgment was reversed, but on what ground does not appear, as no opinion was delivered. The judgment or order of reversal does not state that it was upon any question of fact, and consequently all that we have to consider is whether any error of law appears, calling for the reversal.

The facts found clearly justify the judgment rendered. The word "Pride," as applied to cigars, was an arbitrary word, not descriptive of the article, and one which the plaintiffs could lawfully appropriate as a trade-mark. No prior appropriation of it by the defendants, or any one else, is alleged in the plead-

ings or found, nor does any thing appear in the findings of fact showing the conclusions of law to be erroneous.

The counsel for the respondents argues in support of the reversal, that the defendants' labels, as they appear in the pleadings, do not resemble the plaintiffs' labels. That the words, pictures and color of the labels are different.

The infringement charged is not an imitation of a symbol or label, but the appropriation of a word.

Trade-marks are of two kinds. They may consist of pictures or symbols or a peculiar form and fashion of label, or simply of a word or words, which, in whatever form printed or represented, continue to be the distinguishing mark of the manufacturer who has appropriated it or them, and the name by which his products are known and dealt in. This distinction is recognized in the statutes for the protection of trade-marks as well as in the cases. The act of 1862 (chap. 304), sections 1 and 3, make it a misdemeanor, punishable by fine and imprisonment to counterfeit or imitate the stamp, brand, wrapper, label or trade-mark of a manufacturer, etc., or to keep for sale goods upon which counterfeited labels or trade-marks are placed. And section 4 makes it a like misdemeanor to affix to any package any label, etc., which shall designate the article by a word or words, which shall be wholly or in part the same to the eye, or in sound to the ear, as the word or words previously used by any other person to designate goods manufactured by him.

Where the trade-mark consists of a picture or symbol, or in any peculiarity in the appearance of the label, the imitation must be such as to amount to a false representation, liable to deceive the public and enable the imitator to pass off his goods as those of the person whose trade-mark is imitated. And when there is such an absence of resemblance that ordinary attention would enable customers to discriminate between the trade-marks of different parties, the court will not interfere. The case of *Popham* v. *Cole* (66 N. Y. 69) is an illustration of this rule. In that case the trade-mark was on lard, and consisted of the figure of a hog, with the name of the manufac-

turer and the words "prime leaf lard." The words being descriptive merely of the article, could not be appropriated as a trade-mark, but the figure of the hog was claimed to be protected as such. It represented a large, fat, well-conditioned, domestic hog, while the alleged infringement represented a small, lank and lean wild boar, and the lettering and arrangement of the two were entirely different, and it was held that no deceptive imitation was established. But where the trade-mark consists of a word, it may be used by the manufacturer who has appropriated it, in any style of print, or on any form of label, and its use by another in any form is unlawful. The statute requires only that the imitation should be either the same to the eye, or in sound to the ear as the genuine trade-mark, and this accords with the authorities. The goods become known by the name or word by which they have been designated, and not merely by the manner or fashion in which the word is written or printed, or the accessories surrounding it, and the unlawful use of the name or word in any form may be restrained. In the case of the Akron Cement Company (*Newman* v. *Alvord*, 51 N. Y. 189), the trade-mark consisted of the name "Akron." The genuine label was "Newman's Akron Cement Co., manufactured at Akron, New York. The hydraulic cement known as the Akron water lime." The label held to be an infringement was "Alvord's Onondaga Akron Cement or Water lime, manufactured at Syracuse, New York." The judgment was a perpetual injunction restraining the defendants from using the name "Akron." In the *Congress Spring Co.* v. *High Rock Spring Co.* (45 N. Y. 291), the trade-mark was the word "Congress," and was used by the proprietors by branding the words "Congress Water" on their bottles. The infringement was a brand of "High Rock Congress Spring Water" and was restrained. In *Gillott* v. *Esterbrook* (48 N. Y. 374), the trade-mark was "303." "Joseph Gillott extra fine," on steel pens, and the pens were known as 303 pens. The figures did not express any size or quality of the pens but were selected arbitrarily by the plaintiff. The infringement was "303." "Esterbrook & Co. extra fine," and the

pens were put up in boxes similar to those of plaintiff. It was held 'that the plaintiff had acquired an exclusive right to the use of the figures " 303 " as a trade-mark.

In the present case the word " Pride " was the trade-mark. Plaintiffs' labels were " Hier & Aldrich's," and beneath that in large letters in a different type " Pride " and beneath that " Havana ; " on the inside of the box was a similar label except that between the firm name and the word " Pride " was the picture of a cigar. Defendants' label was " The Pride of Syracuse," and beneath that "Abrahams & Co." The injunction was only against the use by the defendants of the word " Pride " as a trade-mark on cigars. Its use in connection with different words or names from those in connection with which the plaintiffs used it, does not sanction its being pirated any more than did the like use of the word " Akron," " Congress " or the figures " 303 " in the cases cited, or a like variation in many others that might be cited. In the Akron cement case the difference between the labels was quite as striking as in the present case.

The dissimilarity in the form or accessories of the label can make no difference. The trade-mark consisted in the word simply, and the plaintiffs might have printed it on any form of label they might' fancy, without losing the protection of the law. The defendants. had no right to adopt it by merely putting it on a label of different fashion from that which the plaintiffs had been in the habit of using.

It is also claimed that it was not established that the defendants used plaintiffs' trade-mark with intent to defraud, and the case of *Low* v. *Hall* (47 N. Y. 104) is cited. That was an action for a penalty under section 4 of the act of 1862, chapter 306, as amended by section 3 of chapter 209 of the act of 1863, and by that statute the intent to defraud is made an essential element of the offense. An actual intent to defraud can hardly be deemed necessary to entitle the plaintiffs to restrain the defendants from continuing the unlawful use of the plaintiffs' trade-mark whereby the plaintiffs are sustaining damage. The defendants cannot justly contend that

they are entitled to continue to injure the plaintiffs' business by acts which are in violation of their legal rights, on the ground that they do not intend to defraud them. The violation of their rights is in legal contemplation a fraud, and the finding that the defendants, with knowledge of those rights, invaded them and caused them damage, would justify an intendment, if one were necessary, that they did so with intent to defraud.

The only other points made by respondents' counsel are that the finding that the plaintiffs had adopted the word "Pride" as their trade-mark is unsupported by evidence, because their trade-mark, if any, was "Hier & Aldrich's Pride" with the figure of a cigar, and that the plaintiffs were not entitled to an injunction because their right was disputed and the injunction could not be allowed until they had established a legal right in an action at law. The first point has already been answered and the second is not sustained by the authorities, but is in conflict with the cases already referred to.

The order of the General Term should be reversed and the judgment at Special Term affirmed, with costs.

All concur.

Order reversed and judgment affirmed.