EL MODELLO CIGAR MANUFACTURING COMPANY, APPELLANT.
vs. EDUARDO H. GATO, APPELLEE.

1. A general demurrer to a bill, as for want of equity, will be overruled if there is any equitable ground of relief stated in the bill, even if there are any number of grounds of special demurrer.

2. Every manufacturer has the unquestionable right to distinguish the goods that he manufactures and sells, by a peculiar label, symbol or trade-mark, and no other person has a right to adopt his label or trade-mark, or one so like his as to lead the public to suppose the article to which it is affixed, is the manufacturer's.

3. A man may acquire the right of a trade-mark in his own name or the name of any person, but he cannot acquire the right of a trade-mark in the use of his own name to the exclusion of the right of another person by the same name, and whose place of business is in the same place.

4. When a man manufactures his goods at a particular place, he may use the name of that place, in combination with other words, as a trade-mark to distinguish the origin or ownership of his goods, and no other person will be permitted to use the name of the same place upon goods manufactured by him at another and different place.

5. A party whose trade-mark has been violated is entitled to recover all profits realized by the wrong-doer from sales of the spurious articles, and, also, all damages resulting from such violation.

Decree granting injunction affirmed; order sustaining demurrer to that part of bill claiming damages in excess of profits realized reversed.

Appeal from the Circuit Court for Duval county.

STATEMENT.

This case comes here upon appeal and cross-appeal from the Circuit Court of Duval county.

The bill was filed August 6th, 1885, and alleges among other things:

That the complainant engaged in and commenced the manufacture and selling cigars at Key West, Florida, in

1875; that complainant used exclusively Havana tobacco at his factory, and that he established among purchasers, dealers, &c., a high reputation for his cigars, and that his cigars still maintain said high reputation; that the climate of Key West is more favorable to the manufacture of Havana cigars than points north of that place; that to identify his cigars among consumers, &c., years ago complainant adopted and used, and still uses upon the boxes in which his cigars are packed, certain marks, names, labels and pictures, by which his cigars be came known to the trade and public.    That the quality, &c., of his cigars, in the estimation of consumers, &c., depend upon the locality of manufacture, as well as the quality of tobacco used in making.

That the complainant caused to be stamped or branded on his cigar boxes the words "Key West," and the words "Key West" printed upon the labels, pictures and paper, both upon the inside and outside of such boxes, and caused to be stamped or branded upon such boxes, and printed upon the labels, pictures and paper, complainant's name, "E. H. Gato," or "Eduardo H. Gato."

That by reason of having the words "Key West," and complainant's name, "E. H. Gato," and "Eduardo H. Gato," upon such labels, &c., and upon said boxes, his cigars became readily known among dealers, &c.    That in addition to the words, pictures, &c., upon complainant's cigar boxes, complainant, upon certain brands of his cigars, in the manufacture of which he has made a specialty, and on the labels and pictures thereon, has caused to be branded and printed the word "Bouquet," both separate from, and in connection with, the words "E. H. Gato," "Eduardo H. Gato" and "Key West," and that the cigars put up, &c., as aforesaid, have for many years, and are now known to the trade, &c., as "Gato's Bouquet Cigars of Key West,"

"Gato's Key West cigars" and "Cigars Bouquet de E. H. Gato, Key West." That on certain other cigars manufactured by complainant, he has caused to be branded and printed on the labels, &c., of the boxes the words " La Estrella," both separate and in connection with the words "Key West," "E. H. Gato," and "Eduardo H. Gato," and that this brand of cigars has become widely known to the market, &c., as "Gato's Estrella Cigars of Key West," or as "Gato's Key West Estrella Cigars," and that both the Bouquet and Estrella brands of cigars, made by complainant at his said factory, have become favorites in the market among buyers, &c., and are known as cigars of very superior quality, and that said cigars are made of the best Havana tobacco, &c.

That complainant made use of the distinctive words, " Bouquet," " La Estrella " and the words " Key West " and " E. H. Gato " and " Eduardo H. Gato," upon the boxes of his cigars and labels, &c., as trade-marks, and to distinguish his cigars in the market, &c., from cigars made and put upon the market by other manufacturers, long before the defendants made use of the said distinctive words upon boxes of cigars labeled and printed thereon as hereinafter stated and complained of.

That the defendants, or one or more of them, about the year 1882, commenced to manufacture cigars at Jacksonville, Florida, under the name and style of firm of " El Modello Cigar Manufacturing Co.," or " Company," and that they from that time have, and are still, manufacturing cigars on an extensive scale. That defendants use seed tobacco in their business, and make their cigars of seed tobacco, at their factory, which is a much inferior quality of tobacco to the " Havana tobacco," in the estimation of dealers, &c., and is in point of fact, a greatly inferior

tobacco to the " Havana tobacco," and well known to all manufacturers, &c.

That the defendants, well knowing the superior qualities of complainant's cigars, and the large and extensive trade therein, and sales thereof which complainant has built up and established in the markets of the country, and among consumers, &c., by his skill, &c., by making his cigars at Key West, where they were represented to be made, and of Havana tobacco, as they were likewise represented to be made, and that complainant had thereby acquired and secured a profitable business in the making and selling of his cigars, and confederating and contriving to injure complainant in his business, &c., in the year 1883, commenced by the use of divers and sundry contrivances, labels, pictures, names and words, identical with, or similar to the aforesaid labels, &c., used and employed by complainant, in such manner and with such combination upon some of the boxes of cigars made by them, to deceive and palm off upon and sell to purchasers, &c., the inferior cigars of the defendants' manufacture, and as for the cigars manufactured by complainant at Key West, that defendant ever since about the year 1883, have deceived, palmed off and sold continuously to such traders, &c., the product of their factory at Jacksonville, as and for the cigars made by complainant at his factory at West Key, to the great damage and injury of complainant.

That the defendants' brand and stamp upon the boxes containing their cigars manufactured at Jacksonville, and print upon the labels, pictures and paper upon said boxes, the words " Key West " and "G. H. Gato," in conspicuous places upon said boxes, and in form and size of letters identical with, or similar to, the form and size of letters employed and used by complainant upon his boxes of cigars and labels and pictures thereon, and that the defendants'

stamp, brand and print upon the boxes of their cigars, pictures and labels thereon the words " G. H. Gato " and " Key West," both separately and in combination with each other, and in such manner, form, style and general appearance to the eye as to readily deceive traders, purchasers and consumers, and by such means do cause them to take, purchase, sell and consume the cigars of defendants as and for the cigars of complainant, and with the intent and design so to do. That the defendants used and employed upon their boxes of cigars the letters and word "G. H. Gato" prior to the time when the person known by that name became a member of said firm, and the defendants so stamped and printed upon the boxes of cigars, and upon the labels and pictures thereon the said initial letter " G," as to make it appear to the eye, and cause it to be readily read and taken by dealers, &c., for the letter " E," the initial letter of complainant's name; and the defendants have offered and sold, and continue to offer and sell their said cigars, stamped, branded and printed as aforesaid, and for Gato's Key West cigars, at a price much less than complainant has sold or can sell his cigars without loss, and thereby have deprived, and do continue to deprive complainant of his reasonable and lawful profits in his said business.

That the defendants have also used and employed for two years and upward, and do now use and employ, brand and print upon their boxes of cigars, made by them at their factory at Jacksonville, the words " Bouquet " and " La Estella," both separately and in combination with the words "G. H. Gato" and " Key West," so as to appear like and resemble the same words upon the boxes of complainant's cigars, and by such means, and by representing and advertising in newspapers, and by their agents and otherwise, which defendants have done, and now do, the said cigars as "Gato's Key West Cigars," and as " Gato's Bouquet Ci-

gars," and as "Gato's Estrella Cigars of Key West," do, and for a long time, to-wit: for two years and upward, have palmed off and sold to the trade, and to dealers, and their agents and purchasers from defendants have palmed off, and sold to the trade, &c., defendants," said cigars in large quantities as and for the complainant's " Bouquet " and " Estrella " cigars, and " Gato's Key West" cigars, and that by the fraudulent practices and means before stated, defendants have made and realized large profits which justly belong to complainant.

The prayer of the bill is for discovery, an accounting of profits, injunction, damages and general relief.

Decree *pro confesso* was entered for want of answer, &c.

After decree *pro confesso* was entered, the bill was demurred to—

1st. That the bill contains no matter of equity whereon this court can ground any decree, or give complainant any relief as against these defendants.

2d. That the bill, in addition to asking for an injunction, an account of profits, &c., demands damages of the defendants.

The demurrer was overruled as to the first ground, but sustained as to the second ground.

On November 13th, 1886, the defendants answered.

The answer admits that complainant is and has been engaged in manufacturing cigars at Key West, and that they have been and are manufacturing cigars at Jacksonville, under the firm name of " El Modelo Cigar Manufacturing Co." Also that they sell a brand of cigars known as their " Bouquet Cigars," yet they offer them in boxes so labeled and branded as not only not to be easily mistaken for complainant's cigars " Bouquet," but entirely dissimilar. And defendants further aver, that as far as the words " Key

West " are concerned, they make use of said words indifferently on all the boxes of cigars they sell.

All the other material allegations of the bill are denied by defendants, except as to complainants' "Estrella" brand, and defendant's " Estella " brand.

On the 26th day of October, 1886, defendants entered a motion to strike complainant's motion for injunction, " on the ground that before said motion was filed these defendants had interposed a demurrer to the bill for the want of equity, which had been argued and was being held under advisement by the said court, and had not been disposed of, and upon which the said court has not yet delivered a decision."

On the 16th day of November, 1886, complainant moved for injunction upon motion before then filed.

On the 14th day of December, 1886, complainant filed his replication to the answer.

In support of the motion for injunction affidavits were filed by complainant, and counter affidavits by defendant.

On the 10th day of January, 1887, the court granted a writ of injunction, and from the order of the court granting the injunction, the defendant appealed, and by order of the court the appeal is to operate as a supersedeas ; and on the same day the complainant took his cross-appeal from the order of the court sustaining defendant's demurrer to that part of the bill that claims damages of and from defendants, in excess of profits realized.

The errors assigned by appellant are—

1st. The overruling of the appellant's demurrer to the bill of complaint of the said appellee, so as far as the court overruled the same.

2d. In the decree made on the 10th day of January, 1887, in which it was ordered that a temporary injunction issue, as prayed for in said bill of complaint.

The errors assigned upon cross-appeal by complainant are, " Comes now Eduardo H. Gato, who prosecutes a cross-appeal in the above entitled cause, and petitions the said Supreme Court to reverse so much of the interlocutory decree of the Circuit Court entered on the demurrer to the bill, as declares he, as complainant, cannot recover any damages in the cause beyond profits received by defendants by the infringment of his trade-mark, &c. ; and as ground of such appeal says the said Circuit Court erred in so ruling."

The other facts of the case are stated in the opinion of the court.

*Randall, Walkers & Foster* for Appellants.

### BRIEF FOR THE APPEL LANTS.

On the 3d day of August, A. D. 1886, Eduardo H. Gato exhibited his bill of complaint in equity in the Circuit Court for Duval county, against the appellants, alleging that he commenced the business of manufacturing and selling cigars at Key West, Florida, in the year 1875; that he has always exclusively used Cuban or Havana tobacco in the making of his cigars, which, being made at Key West by skilled Cuban workmen, and by faithfully excluding American grown tobacco from being used in the manufacture of his said cigars, he has acquired a reputation for the product of his factory, of a very high order. That to designate his cigars, he used the words " Key West," and also certain labels and pictures and printed matter consisting of the words " E. H. Gato," "Eduardo H. Gato," " Bouquet," "Gato's Bouquet Cigars of Key West," " Gato's Key West Cigars," "Cigars Bouquet de E. H. Gato," " Gato's Key West," and a like combination with the words " La Estrella." Said bill further states that the El Modello Cigar

Manufacturing Company, of Jacksonville, Florida, started business there in the year 1882, use American grown or seed tobacco, and make their cigars now and have always made their cigars at Jacksonville aforesaid, of seed tobacco ; and that said defendants desiring to injure the plaintiff and to reap the benefit of his reputation and obtain his trade, used similar labels, pictures, names and words, identical with those used by the plaintiff; notably using the words "G. H. Gato" and "Key West," and the words "Bouquet" and "La Estrella," separately and in combination with the words "G. H. Gato" and "Key West," so as to appear like and resemble the devices and words employed by the plaintiff, and that the cigars so packed by defendants have been palmed off and sold to the trade and dealers and consumers thereof as and for plaintiff's Bouquet, Estrella and Gato's Key West Cigars, all of which is alleged to be contrary to equity, and tends to the manifest wrong and injury of the said plaintiff.

The defendants on the Rule Day in October, 1886, interposed a demurrer to said bill of complaint, on two grounds—

1st. For want of equity, and

2d. Because complainant asked for damages in addition to profits.

The demurrer was argued on the 11th day of October, and on the 2d day of November, the court overruled it as to the first ground, and sustained it as to the second.

A motion was made out on the 16th day of October, 1886, for a temporary injunction. This came on to be heard on the 15th day of November, and was argued and submitted, and the court aving held it under advisement, on tenth day of January, 1887, granted said motion. From this decree defendants have appealed, and assign as error—

1st.  The overruling of the demurrer, and

2d.  The granting of said temporary injunction.

### LACHES.

We desire first to call the attention of the court to the laches of complainant, which appears on the face of his bill of complaint.   He alleges that defendants commenced infringing his trade mark in 1882.   His bill was filed August 3d, 1886, about four years after said alleged infringement began :

" Where a plaintiff laid by for two years before filing his bill for an injunction, having seen labels of the defendant exhibited publicly, which he now complained of as being colorable imitations of his labels, such laches was a good defence." Wait's Actions & Def., Vol. 6, pp. 42, 43, citing Beard vs. Turner, 13 L. T. (N. S.), 747.

On page 43, same work :

" In a later case the plaintiff was precluded from right to relief by delaying six months to commence suit." Eastcourt vs. Eastcourt ; Hop Essence Co., 44 L. J. (N. S.), ch. 223.

" *Vigilantibus non dormientibus equitas subvenit.*"

In the words of Lord Camden, in Smith vs. Clay, 3 Bro. C. C., 640 :

"A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his rights, and acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith and reasonable diligence." Also see Wait's Act. & Def., Vol. 6, p. 37, citing Amoskeag Mfg. Co. vs. Garner, 4 Am. L. T. (N. S.), 176, *et seq.*

Passing from this, we draw attention to the charge made by defendants in their answer, that complainant has been

from some time between the year 1880 and the year 1883 manufacturing cigars of seed or American grown tobacco, under the name of E. G. Badia, the surname of his deceased mother. If this be true, then the court must, upon principle, refuse him any relief. The explanation offered by the complainant in the affidavits filed falls short of its object; for if there be a person of the name of E. G. Badia in Key West, or indeed in existence within reach of complainant, then we take it this fact could be easily proved by the affidavit of said Badia, or by that of some other veritable person.

In discussing the demurrer, the first question to be disposed of is, whether the defendants, among whom is Mr. G. H. Gato, have right to the use of Mr. G. H. Gato's name. Mr. G. H. Gato has the unqualified right to make cigars, and has the unqualified right to use his own name in announcing the origin of said cigars, provided no fraud is practiced by him in so doing. There are many cases sustaining this position; but before citing several of such adjudications, from which we purpose quoting, we desire particularly to refer to the extensive and exhaustive note to the case of Partridge vs. Menck, reported in 47th of American Decisions, at page 281. Note pp. 284-289, an instructive brief itself.

In the case of Clark vs. Clark, New York Supreme Court, 25 Barb., page 76, it was held: "Where the plaintiff and the defendant have nearly the same names, and are engaged in the same business, each has a right to use his own name, and a party will not be restrained by injunction from using his own name, unless he so use it to mislead."

In the case of Burgess vs. Burgess, 17 English Law & Equity, page 257, it was declared: that "where a person is selling an article in his own name, fraud must be shown

to constitute a case for restraining him from so doing on the ground that the name is one in which another has long been selling a similar article; therefore where a father had for many years exclusively sold an article under a title of Burgess' Essence of Anchovies, the court would not restrain his son from selling a similar article under that name, no fraud being proved.

In the case of Coats vs. Platt, reported in the 17th Legal Intelligencer, 213, it was decided: "That where a firm name, as J. & P. Coats, in connection with certain symbols, has acquired the properties of a trade-mark, it is no infringement for two other individuals bearing the same name to adopt the style J. & T. Coats to designate goods of a like description, provided they do not use it in connection with the residue of the trade-mark of the former firm.

In the case of Faber vs. Faber, reported in the 49th Barbour, 357, N. Y. Supreme Court, it was decided: "That the court will not enjoin a defendant from using his own name in the prosecution of a manufacturing business because it is similar to that of a rival manufacturer in the same business. Any injury which one manufacturer may sustain by the competition of other persons of the name from the use of such name merely, is without remedy.

In the case of Wolfe vs. Burke, N. Y. Supreme Court, reported in 7th Lansing, 151, it was decided: " That a man cannot make a trade-mark of his name to the exclusion of a like use of it by another of the same name, the use of it by the latter being fair, and unaccompanied by contrivances to deceive.

In the case of Maneely vs. Maneely, reported in N. Y. Court of Appeals, 62 N. Y., 427, it was held: "That equity would not interfere to prevent the defendant Maneely from the use of his own name in such business, no fraud or intention to injure the plaintiff's business."

In the case of Massam vs. J. W. Thorley's Cattle Food
Company, Vice Chancellor Malins decided, as per report
in the 36th Law Times, New series, 848, that the defend-
ant J. W. Thorley was entitled to use his own name, either
alone or as part of a company, or in the phrase " Thorley's
Cattle Food," in the manufacture of an unpatented article
provided that he acted without fraud, and that the execu-
tors of Joseph Thorley were not entitled to prevent such
use by defendant.

In the case of Ainsworth vs. Walmsley, V. C. Wood in
the opinion in said case, reported in the 35th Law Journal,
Chancery, 352, makes use of this illustration : " Is not
a man's name as strong an instance of trade-mark· as can
be suggested, subject only to this inconvenience, that if a
Mr. Jones or Mr. Brown relies on his name, he may find it
a very inadequate security, because there may be several
other manufacturers of the same name."

In the case of Hardy vs. Cutter, reported in the 3d U. S.
Patent Gazette, 468, Judge Wheeler in the 6th District
Court of California, decided : " That every person has the
right to use his own name in connection with articles he
manufactures or sells, provided he does not use it in such a
way as to deceive or defraud the public, or obtain for him-
self at the expense of another, an undue advantage."

In the case of Carmichael vs. Latimer, decided in the
Rhode Island Supreme Court, reported in 23 American Re-
ports, 481, Chief Justice Durfee decided, " A manufacturer
has a right to attach his own name to his manufacture, even
though a rival manufacturer of the same name, whose good
prestige in the market may suffer in consequence the re-
sulting damage is *damnum absque injuria.*"

In the case of Decker vs. Decker, reported in 52 How-
ard's Practice, 218, a motion by the plaintiffs for an injunc-
tion to restrain the defendants was denied, on the ground

that the defendants could not be restrained from the use of their own names if no fraud appeared.

In the case of Gilman vs. Hunnewell, reported in 122 Massachusetts, 137, it was decided, "A person may have a right in his own name as a trade-mark, as against a person of a different name; but he cannot have such a right as against another person of the same name, unless the defendant uses a form, stamp or label so like that used by the plaintiff, as to represent that the defendant's goods are of the plaintiff's manufacture.

From a study of the foregoing decisions (and it may be here remarked that many others could be cited to sustain the point involved) it is very plain that the plaintiff, Eduardo H. Gato, has no right to claim or insist that any other cigar manufacturer bearing the name of Gato must refrain from using it because such use may possibly injure him in his business.

Our next proposition is, that the claim made by the plaintiff that he alone is entitled to use the name "Key West" is untenable. No man can obtain the monopoly for the exclusive right of property in the public and well known name of a geographical district.

We need only cite a few cases to sustain this elementary proposition. The Moline Plow case was decided in Candee vs. Deere, reported in the 54 Illinois, 439; the United States Supreme Court, in the case of the Delaware & Hudson Canal Co. vs. Clark, reported in the 13th Wallace, 311; the Glendon Iron Co. vs. Uhler, 75 Pa., 467; Blackwell vs. Armistead, 5 Am. Law Times, 85; Dunbar vs. Glenn, 42 Wis., 118; Caswell vs. Davis, 58 N. Y., 223.

In the case in 13th Wallace, 311, it was held that "the same reasons which forbid the exclusive appropriation of generic names or those merely descriptive of the article

57

manufactured, and which can be employed with truth, apply with equal force to the appropriation of geographical names designating districts of the country.

"Their nature is such that they cannot point to the origin or ownership of the article of trade to which they may be applied. They point only to the place of production, and could they be appropriated exclusively, the appropriation would result in mischievous monopolies. Could such phrases as Pennsylvania Wheat, Kentucky Hemp, Virginia Tobacco, or Sea Island Cotton be protected as trade marks; could any one prevent all others from using them or from selling articles produced in the districts they describe under those appellations, it would greatly embarrass trade, and secure exclusive rights to individuals in that which is the common property of many. It can be permitted only when reasons that lie at the foundation of the protection given to trade marks are entirely overlooked."

In the case of the Glendon Iron Co. vs. Uhler, reported in the 75 Pennsylvania, 467, it was decided : "That as a general rule, the name of a town or city cannot be exclusively appropriated as the trade mark of any one."

In the case of Blackwell vs. Armistead, Judge Rives, in his opinion reported in the 5th Am. Law Times, 85, decided: "That the word 'Durham' has been adjudged to be *publice juris*, in respect to the residents of that place, and in case of Blackwell vs. Wright, reported in the 73d North Carolina, 310, an injunction was refused."

In the case of Dunbar vs. Glenn, reported in 42 Wis., 118, it was decided by the Supreme Court that "Where a trade mark is a generic or geographical name, designating a city or district of country, or is merely descriptive of the article manufactured, and can be employed with truth by other manufacturers, it is not entitled to legal protection."

In addition to these decisions, we submit this point as

worthy of serious consideration; that inasmuch as the manufacture of cigars is for revenue purposes, controlled and restricted by the General Government, who have by legislation vested the supervisory control of such manufacture in the Internal Revenue Department, and whereas by the provisions of the United States Revised Statutes and the regulations prescribed by the said Internal Revenue Department, a caution label showing the origin in manufacture of the cigars contained in each box must be affixed thereto, and so long as the said Internal Revenue Department is satisfied with and permits as lawful the use on said caution labels of the words "Key West," the same being embraced in the same United States Collection District as Jacksonville is, such use by a Jacksonville cigar manufacturer of the words Key West is not unlawful and cannot be declared such at the dictation of the plaintiff.

The point is this: If Mr. Eduardo H. Gato would not have the right to have a Mr. Gato manufacturing cigars at Key West, restrained, and he certainly would not under the foregoing authorities, then he certainly has no right amounting to a legal right to ask that a favor be extended to him which is not sanctioned by legal authority. It has become too well settled by custom in the trade, that Key West cigars, so called, apply to all cigars made in the Collection District of Florida. The same as Cuban grown tobacco has come to be known and described by custom as Havana tobacco. The custom of branding all cigars manufactured in the Key West District as Key West cigars is so well known and understood in the cigar trade of this country, that none is misled thereby, and no injury results from a use of that which custom has sanctioned and made permanent.

We now come in the order of this discussion to consider the words "Bouquet" and "Estrella." It is well settled

as an elementary principle governing the law of trade-marks, that no word descriptive of kind or quality can be used and protected as a trade-mark. The word Bouquet, as defined by Webster, signifies an agreeable perfume; an agreeable, aromatic odor. That certainly designates the quality of a cigar, and it is well known in the trade, and is used as a trade designation, either in wine or in tobacco. The following cigar factories in Havana, Cuba, use Bouquets: Bock & Co. make the Alexander II Bouquets Finos; The Flor de Alma Petit Bouquet; The Alta Club Bouquets and Concha Bouquets; Ambrosia and Nectar Bouquet; The Anita Petit Bouquet; Antiguedad Petit Bouquet; Flor de Benito Suarez and Petit Bouquets; Carolina Bouquets and Concha Bouquets and Petit Bouquets; El Brilliant Bouquets, La Camelia Bouquets; Caridad Bouquets; Cortina Mora Company Petit Bouquets; and Flor Cubana Boquets; Diaz & Garcia Dulcinea Bouquets; La Escepcion Bouquets; Figaro Bouquets; Flor de las Flores Bouquets; Selectas Petit Bouquets; Manuel Garcia Alonzo Bouquets; Henry Clay Bouquets; La Hijo Vuelta Abajo Bouquets; •La Intimidad Bouquets; Por larango Bouquets Finas; La Lectura Bouquets; La Pucha de Flores Bouquets; and Petit Bouquets; Puck Bouquets; Punch Bouquets; La Rosa Bouquets; Alvarez Hijo Bouquets; and Bouquets Fina; Soberanos Bouquets and Bouquets Especia; Troya Bouquet; and nearly all noted factories in the U. S. make Bouquets and sell under the same both separately and in combination.

From the foregoing list of names and brands coupled with the word Bouquet, it is very evident that plaintiff can under no circumstance claim title thereto to the exclusion of a similar use by the defendants.

The same argument applies to the word "Estrella." This word indicates quality, being the Spanish for a star.

Among the numbers of manufacturers, it is easy to find it in common use.   Let the court compare the cigar boxes filed as exhibits to the bill, and the striking dissimilarity between the pictures and labels become at once apparent. Besides, the cigars sold by defendants, under the word Bouquet are each wrapped with a band having "Bouquet" printed thereon but those of the complainant are bare. No one of intelligence looking for complainant's cigars could possibly be mistaken.

We now come to a consideration of the allegations in the bill contained, charging that the cigars made by the defendants are sold as plaintiff's, and palmed off on the purchasing public as such.   This point was passed upon in the celebrated Sapolio case, decided by the New York Court of Appeals, sub nom.   Enoch Morgans Son's Company vs. Troxwell, and reported in 89 N. Y. Court of Appeals, p. 292.   In that case the charge was also made, as in this that defendant was palming off his goods as the goods of plaintiff, and the court very rightly held that the real question to be considered in such an issue and in such form of action, was the one whether an imitation of a trade mark belonging to plaintiff, and which would be sustained as such, was being perpetrated by the defendant, and if no such imitation existed, the judgment could not be sustained on any other grounds.

To use the language of the court, in the unanimous opinion given by it, as follows: "If, as we think, there was no imitation of any trade mark of the plaintiff, the judgment cannot be sustained on the ground of fraudulent representations or devices on the part of the defendants to palm off their goods upon individuals as the goods of the plaintiff. What remedy there is for such a wrong if proved, it is not necessary now to inquire; but the remedy clearly is not to restrain the defendants from selling their own goods in

packages and labels which do not infringe upon any trade mark of the plaintiff."

This decision covers the case under consideration, and may be profitably considered.

To recapitulate: As to the use of the words G. H. Gato, Key West, Bouquet or Estrella, by the defendants, there can be no question in view of the foregoing decisions, that the plaintiff has no legal right or equitable title giving him a monopoly of the use of such terms or either of them, in view of the fact that the courts have so uniformily held otherwise, and also in view of the fact that the devices and symbols used by the defendants to designate their various brands are so totally different from the devices and symbols used by the plaintiff.

We would call especial attention to the very lucid and comprehensive exposition of the law of trade marks regulating their use, when such trade marks consists of arbitrary words, as made by the New York Court of Appeals in the case of Hier *et al.* vs. Abrams *et al.*, and reported in 82 N. Y. Court of Appeals Report, p. 520. That decision points out and distinguishes the difference of the application of law between trade marks consisting of symbols or devices alone, as contra-distinguished from trade marks consisting of arbitrary words. And the application of this case to the case at bar is patent in sustaining the contention that the plaintiff has no right to exercise a monopoly in or become entitled to the exclusiveness of the words Key West, Bouquet or Estrella, inasmuch as he was not the original user of the same, and further, inasmuch as the symbols used by defendants are totally different from the symbols used on plaintiff's labels by him. The celebrated Hoh case cited in the authority last quoted controls the issue in the case at bar in that particular direction.

In regard to the second assignment of error, we submit

that the court erred in granting the order for a temporary injunction.

We contend that the court had doubt, upon the case being submitted on motion for the injunction. This is manifest from the time during which it was held under advisement. If the court doubted, the motion for the temporary injunction should have been refused.

" In many cases it may be difficult to determine whether the complainant's sign or trade-mark has been actually pirated in such a manner as to be likely to deceive and impose upon his customers or the patron of his manufacture, trade, or business. And in cases of doubt the court should not grant or sustain an injunction until the cause is heard upon pleadings and proofs, or until the complainant has established his right by an action at law. But if the court sees that the complainant's trade-mark are simulated, in such a manner as probably to deceive his customers, or the patrons of his trade or business, the piracy should be checked at once, by an injunction. In this case, however, I am not satisfied that the label used by the defendants will probably have the effect to deceive and impose upon those who are in the habit of buying and using the matches of these defendants are of his manufacture." Partridge vs. Menck, Am. Decisions, vol. 47, p. 282.

The case was submitted on the motion for a temporary injunction upon the bill, the answers of defendants Sigo Myers and G. H. Gato, and upwards of fifty affidavits in behalf of defendants, as against less than half a dozen affidavits on behalf of complainant.

We respectfully submit to the court that these affidavits of witnesses, taken from nearly every quarter of the Union, made by persons residing in some of the most important cities—centers of wholesale and retail trade in cigars, both in number and in character (we speak with reference to the

positive averments of the affiants) ought to have overborne the affidavits and the bill of the complainant.

The counsel for the complainant very candidly informed the solicitors for the defendants, and repeated it upon his argument before the court below, that he did not regard the answers of the two defendants referred to as anything more than affidavits. This, however, is a matter for the court to determine. We speak in regard to the absence of answers, or affidavits if the court please, of the other two defendants, that which is not improper for us to state in view of the fact that counsel for the complainants are well aware of the situations and exigency that prevented counsel for defendants from filing answers of the other defendants, when we say that the court had concluded to hear the motion for a temporary injunction on so short a notice, that we were unable to obtain anything from the defendants Herman Myers and Frederick Myers, one of them residing in Virginia and the other in New York; and we beg also to remark in that connection that neither of the absent defendants has any personal acquaintance with the matters involved in this suit.

Inasmuch as the complainant has taken a cross appeal from the decision of the court sustaining the demurrer, as to the damages claimed in the bill of complaint, we respectfully submit, that we believe it is unnecessary, so far as authority is concerned to do more than refer the court to the fundamental principles controlling this subject—we mean the subject of injunctions against infringements of trade-marks. The unbroken line of authorities upon this subject is, that there is no jurisdiction in a court of equity to go beyond restraining the defendants from the use of complainant's trade-mark, and compel him to account for the profits he has wrongfully derived from the invasion of complainant's rights. He may have his action for dam-

El Modello Cigar Mf'g. Co. vs. Gato—Opinion of Court.

ages at law, and recover them, but the true doctrine is that if he recovers damages at law, that then he can do no more upon the equity side of the court than enjoin defendant from further use of his trade mark.

The following are authorties in point upon this proposition: Hostetter vs. Vowinkle, 1 Dill., 329 ; Waite's Ac. & Def. v. 6, p. 36, citing Stonebreaker vs. Stonebreaker, 33 Md., 252; Blackwell vs. Wright, 73 N. C., 310; Ainsworth vs. Walmsley, L. R., 1 Eq., 518; S. C., 35 L. J. (N. S.) Ch. 532.

*G. B. Patterson*, *H. Bisbee* for Appellee.

MITCHELL, J.: The first question to be decided is, did the court below err in overruling the first ground of the demurrer to the bill ?

In discussing the demurrer to the bill counsel for appellants insist that defendants had the right to use the name of G. H. Gato, and that Gato had the right to manufacture cigars, and that G. H. Gato had the right to use his own name in announcing the origin of his cigars, provided no fraud was practiced by him in so doing, and cite the following authorities as sustaining their position : Partridge vs. Menck, 47 Am. Dec., 281, and note ; Clark vs. Clark, 25 Barb., 76 ; Burgess vs. Burgess, 17 Law & Eq., 257 ; Faber vs. Faber, 49 Barb., 357; Wolfe vs. Burke, 7 Lansing, 151 ; Meneeley vs. Meneeley, 62 N. Y., 848 ; Mansam vs. Thorley Cattle Food Co., 36 Law Times, U. S., 427 ; Ainsworth vs. Walmsley, 35 Law Journal, Chancery, 362 ; Hardy vs. Cutter, 3 U. S. Patent Gazette, 468 ; Carmichael vs. Latimer, 25 Am. Rep., 481 ; Decker vs. Decker, 52 Howard's Practice 218 ; Gilman vs. Hunnewell, 122 Mass., 139.

Now, we admit the soundness of the legal proposition as laid down *supra*, but after the complainant, whose factory

was located at Key West, had adopted his own name in combination with the words " Key West," " La Estrella " and " Bouquet," and certain brands, labels and pictures as his trade marks, the defendants did not, afterwards, have the right to adopt the name of G. H. Gato in combination with the words " Estella," " Bouquet " and " Key West," and certain brands, labels and pictures, in combination with the name of G. H. Gato, as their trade marks, when the words, &c., so adopted by them so closely resembled the trade marks so adopted by the complainant as to enable them to palm off upon and induce an ordinary purchaser to buy their cigars for those of the complainant, whereby the defendants might be profited, and the complainant might be injured. Robertson vs. Barry, Am. Trade Mark Cases, 153 ; Humphries Specific Homeopathic Medicine Co. vs. Wenz, Ibid, 711 ; Liggett & Meyer Tobacco Co. vs. Hynes, Ibid, 898 ; Glen Cove Manufacturing Co. vs. Ludeman, Ibid, 957 ; Insurance Oil Tank Company vs. Scott, 39 Am. Rep., 286 ; Hier vs. Abrahams, 82 N. Y., 519.

It is now well established that a man may acquire the right of a trade mark in his own name or in the name of any person, but a man cannot acquire the right of a trade mark in the use of his own name to the exclusion of the right of another person by the same name, and whose place of business is in the same place ; yet it is well settled in the law of trade marks that when one person uses his own name to indentify and distinguish the origin and ownership of his goods which are manufactured at a particular place, no other person by the same name will be permitted to use his name on his own goods, if under such circumstances as are calculated and designed to injure the trade and business of another. In other words, one man will not be allowed, though his name be the same as that of another person or

manufacturer, to represent his goods as, and for the goods of another. Gilman vs. Hunneman, 122 Mass., 139 ; Robertson vs. Berry, 33 Am. Rep., 337, note 1.

A man may establish his right to a trade mark in the name of a place, city or town, and it is well established that when a man manufactures his goods at a particular place and uses the name of that place in combination with other words as a trade mark to distinguish the origin or ownership of his goods, no other person will be permitted to use the name of the same place, upon goods manufactured by him at another and different place. Canal Company vs. Clark, 13 Wall., 325 ; Congress Spring Co. vs. High Rock Spring Co., 45 N. Y., 291 ; Newman *et al.* vs. Alvord *et al.*, 51 N. Y., 189 ; The Glen & Hall Manufacturing Co. vs. Hall, 61 N. Y., 226 ; Lawrence vs. Hamm, 1 Federal Reporter, 24 ; Gilman vs. Hunnewell, 122 Mass., 139 ; Robertson vs. Berry, 33 Am. Rep., 337, note 1. Under these decisions it will be seen that the defendants clearly had no right to use the name of the place, Key West, or the name of G. H. Gato, either alone or in combination with the other words, as alledged in the bill to have been used by them.

The defendants by their answer aver that they did not intend to injure the complainant by any contrivance, &c.

But, do not the facts and circumstances of the case contradict such averments of the defendants? If they did not intend to injure the complainant, why did they aver in their answer that the atmosphere of Key West was not more favorable for the manufacture and preservation of cigars than at points north of that place, when they had branded their boxes " Key West," and had printed on their letter and bill heads the words " Key West " and " Gato's Fine Key West Cigars," thereby inducing the public to believe that their cigars were manufactured at Key West, when in fact

they were manufactured at Jacksonville? And why did they use the name of the junior member of their firm in combination with the words "Key West," "La Estella" and "Bouquet," the only difference between the name of the said junior member of said firm being the initial letter of his christian name, "G," the initial letter of complainant's christian name being "E," and why did defendants so print the name of the junior member of their firm upon their cigar boxes, that it would readily be taken for the name of the complainant, "E. H. Gato," as for that of said junior member, "G. H. Gato?"

There can, we think, be but one answer to these questions, and that is, that the defendants, by their said actions, intended to deceive the public by palming off their cigars as, and for those of the complaint, as alledged in the bill.

A general demurrer to a bill, as for want of equity, will be overruled if there is any ground of equitable relief stated in the bill, even if there are any number of grounds of special demurrer. Thompson vs. Maxwell, 16 Fla. 775.

The demurrer to the bill in the case at bar is general, and the bill shows on its face that the complainant is entitled to the equitable relief prayed for, wherefore, the order for the Chancellor overruling the first ground of the demurrer was not erroneous.

In the second place, did the court below err in granting the temporary injunction?

We have before us as exhibits, (sent up with the record of the case) empty cigar boxes of the complainant's "La Estrella" and "Boquet" brand of cigars, and one of the defendant's "Boquet" brand, and by placing the two Boquet boxes side by side, the dissimilarity between the two is apparent, and there is sufficient difference between them, we think, to enable an expert in such matters to distinguish the brand of the complainant from that of the defendants with-

## JUNE TERM, 1889. 911

El Modello Cigar Mf'g. Co. vs. Gato—Opinion of Court.

out placing the boxes side by side, but the general appearance of the two boxes, and the stamps, brands, pictures, labels, letters thereon and therein are so very similar in size, shape, and color that they are calculated to mislead an ordinary purchaser, and whenever this is the case a court of equity will grant a decree restraining a defendant from so similating the trade marks of the complainant. Robertson vs. Berry, American Trade-Mark Cases, 153; Humphries Specific Homeopathic Medicine Company vs. Wenz., Ibid, 711; Liggett and Meyer Tobacco Company vs. Hynes, Ibid, 898; Glen Cove Manufacturing Company vs. Ludeman, Ibid, 957; Insurance Oil Tank Company vs. Scott, 39 Am. Rep., 286 ; Hier vs. Abrahams, 82 N. Y., 519.

When a trade-mark is calculated to mislead, even if no one has been actually deceived, an intention to deceive will be presumed. Carie's Appeal, Am. Trade-Mark Cases, 116.

And, although a man may not intend to injure another, yet he will not be allowed to adopt the marks by which the goods of such other person are designated, if the effect of adopting them would injure such other person. Sheppard & Co. vs. Stuart & Peterson, Am. Trade-Mark Cases, 193 ; Hier et al. vs. Abrahams, 82 N. Y.,519; Williams vs. Brooks et al., 50 Conn., 27³; Liggett & Meyer Tobacco Co., vs. Hynes, 20 Federal Reporter, 883.

We have not been furnished with any of defendant's boxes of the "Estella" brand, but the bill alleges that this brand of defendants so closely resembles the "Estrella" (star) brand of complainant that it is calculated to mislead the public into believing the brand of the defendant to be that of the complainant. The demurrer to the bill admits these allegations of the bill, and the defendants virtually admit the truth of the allegations in their answer. They, it is true, deny in a general way, the allegations of the bill in regard to the said brand so closely similating complainant's

brand, but failed utterly to show wherein their brand does not resemble the complainant's. They admit the manufacture of the brand "Estella" brand of cigars at Jacksonville, but say that the word "Estella" is not "Estrella," as alleged in the bill. Is this a denial of the positive allegations of the bill as to the resemblance between the said two brands? Certainly not. Then why did not the defendants deny the allegations of the bill if they were not true? They admit the allegations of the bill to be true, that is to say, that they intended to deceive the public, profit by the deception, and to injure the complainant. The omitting of the letter " r, " as aforesaid, was but an artifice resorted to by the defendants under the belief that it would not be detected, but if detected, it might protect them in a suit for damages by the complainant against the defendants for so pirating his trade-mark. No other conclusion would be consistent with the facts of the case.

The affidavits of Bishop & Co. and others filed in the case, tend to show that the defendants have palmed off and sold their said cigars as, and for those of the complainant, and that the agents of the complainant have had to publish notices in newspapers cautioning the public against the deception thus practiced by the defendants. This the defendants have attempted to contradict by filing counter affidavits, stating that the affiants knew of no such efforts either on the part of the defendants or their agents, to palm off or use their cigars as, of and for those of the complainant. This is mere negative evidence and proves nothing. There was no error in granting the temporary injunction.

This disposes of the error assigned by appellants, but counsel in their argument further contend that the complainant has been guilty of such laches that he is not entitled to the relief he prays for, and cites Wait's Actions and

Defenses, volume 6, pp. 42, 43; Beard vs. Turner, 13 Law T. (N. S.), 747.

The rule in England in trade mark cases is more stringent than in this country, and a lack of diligence there in suing deprives complainant in equity of the right to an injunction or on account. But our courts are more liberal in this respect. A long lapse of time will not deprive the owner of a trade mark of an injunction against an infringer, but a reasonable diligence is required of a complainant in asserting his rights, if he would hold a wrong-doer to account for profits and damages. This rule, however, applies only to those cases where there has been an acquiescence after a knowledge of the infringement is brought home to the complainant. Sawyer vs. Kellogg, Am. Tra. e Mark Cases, 564.

Nor will the acquiescence of any person in the wrongful use of his name, estop him from asserting his rights in equity unless he has notice during such acquiescence of the facts rendering the use of his name wrongful. Horton Manufacturing Company, Jamestown, N. Y., vs. Horton Manufacturing Company, Ft. Wayne, Indiana, Am. Trade Mark Cases, 857.

And the laches of the complainant will not avail as a defence in a proceeding to restrain the use of a trade name when the defendant adopted the name with a fraudulent intent. Sanders vs. Jacob, Am. Trade Mark Cases, 1048.

The complainant was in no such laches as would deprive him of his rights in the premises.

The only remaining question to be considered is, did the chancellor err in sustaining the second ground of defendant's demurrer to the bill?

This court held in Doggett vs. Hart et al., 5 Fla., 230, that "in cases of accounts, of agency, of apportionment, of general average, of contribution, of waste and of partnership, when chancery once entertains a suit upon grounds

legitimately cognizable in that court, it will proceed to adjudicate other matters of which it has only incidental cognizance, in order to avoid a multiplicity of suits."

"Another rule," says Mr. Story, (1 Story's Equity Jurisprudence, section 64, k,) " respects the exercise of jurisdiction, when the title is at law, and the party comes into equity for a discovery, and for a relief, as consequent on that discovery. In many cases it has been held, that, where a party has a just title to come into equity for a discovery, and obtains it, the court will go on, and give him the proper relief; and not turn him round to the expenses and inconvenience of a double suit at law. The jurisdiction having once rightfully attached, it shall be made effectual for the purposes of complete relief. And it has accordingly been laid down by elementary writers of high reputation that 'the court, having acquired cognizance of the suit for the purpose of discovery, will entertain it, for the purpose of relief, in most cases of fraud, account, accident and mistake.' "

In the case at bar the bill prays for discovery, an accounting of profits, injunction, damages and general relief, and the only ground of objection to the bill, raised by the second ground of defendants' demurrer, is, that the bill prays damages.

That a man whose trade-marks have been infringed upon as in this case, is entitled to compensation for the infringement, is unquestionable, and it strikes us that it makes no difference whether the compensation to which the complainant is entitled is called profits or damages. What is an accounting, but the method by which to ascertain the complainant's damages or compensation for the wrong and injury done him by the defendants?

That the complainant is entitled to damages see Hostetter et al. vs. Vonwinkle et al., 1 Dillon, 329 ; Pitt vs. Hall,

El Modello Cigar Mf'g. Co. vs. Gato—Opinion of Court.

2 Blatch. U. S. C. C., 229; Atlantic Milling Co. vs. Robinson et al., 20 Federal Reporter, 217; Graham vs. Platt, 40 Cal., 593; 6 Am. Rep., 639; Marsh vs. Billings, 7 Cush., 322; Stonebreaker vs. Stonebreaker, 33 Md., 252; Blackwell vs. Wright, 73 N C., 310.

A party whose trade-mark has been violated is entitled to recover all profits realized by the wrong-doer from sales of the spurious article, and also, damages resulting from such violation. Graham vs. Platt, 40 Cal., 593; Peltz vs. Eichel, 62 Mo., 171; 7 Cush., 322; Atlantic Milling Co. vs. Robinson et al., Am. Trade-Mark Cases, 904; Hostetter et al. vs. Vouwinkle et al., 1 Dill., 329; Pitts vs. Hall, 2 Blatch., 229.

The owner of a trade-mark is entitled to nominal damages for the violation of his trade-mark, although it is not shown that he has sustained actual damages, and although the defendant's articles are not inferior in quality to his own. Blofield vs. Payne, 4 Barn. & Ad., 410; S. C. 1 New. & Man., 335; Thompson v. Winchester, 19 Pick., 214; Rodgers vs. Nowill, 5 C. B., 109; Conran v. Joseph Uhrig Brewing Co., Am. Trade Mark Cases, 316.

The decree of the court below granting injunction is affirmed, but the order sustaining defendant's demurrer to that part of the bill that claims damages, in excess of profits realized, is reversed, and the cause remanded for further proceedings consistent with this opinion. The appellant, El Modelo Cigar Manufacturing Company, to pay all costs of the suit.

Appellants filed a bill for a rehearing, which was denied.

MAXWELL, J.: Appellants are not satisfied with the decision in this case, and they now come with application for a

rehearing, based on mistakes of the court in the opinion rendered.

The first mistake complained of is in relation to a statement of the court respecting allegations of appellants in regard to climatic and atmospheric conditions in Key West, as adapted to the manufacture and preservation of cigars. The court asked in argument why did appellants "aver in the answer that the atmosphere in Key West was not more favorable for the manufacture and preservation of cigars than at points north of place," &c. So far as we can see this is but hypercritical, in that the word "aver" was used instead of the word "deny." Whether it was an averment or denial made no difference as to the question then under discussion, of intention to injure complainant by the use of simulative words and brands.

The next ground for rehearing is, that "there is no allegation in the bill or answer, nor is there any proof that G. H. Gato was the junior member of the firm of the El Modelo Cigar Manufacturing Company, yet the court, in its opinion, asked why did they use the name of the junior member of the firm in combination with the words 'Key West,' 'La Estella' and 'Bouquet.'" With all due respect to counsel, this seems simply frivolous. G. H. Gato was spoken of as the junior member of the firm because in the list of four partners his name appeared last. But whether he was a junior or other member did not affect the question involved in the use of his name, the impressive fact being that his name *was* used, instead of any other of the four, or of the firm name, to direct attention to the brand of cigars.

The third ground for rehearing is, that there was a mistake of the court in reference to the La Estella brand of cigars, in saying that the defendants " admit the allegations of the bill to be true, that is to say, that they intended to deceive the public, profit by the deception, and to injure the

complainant." The paragraph of the opinion in which this sentence occurs, taken altogether, is such as to render the sentence susceptible of reference to the admission of defendants under their demurrer to the bill. In this view the statement is correct. But without regard to that, and even if the mistake is a substantive one, it cannot affect the conclusion of the court, for there is still the " Bouquet " brand not touched by this mistake, which furnishes sufficient ground for that conclusion.

A rehearing is denied.