been denied four years ago. The order should be affirmed, with ten dollars costs and disbursements. Present—Van Brunt, P. J., Rumsey, Patterson, O'Brien and Ingraham, JJ.

**Wilhelm Weiland, Respondent, v. Etta Forgotston and Others, Defendants; Adelaide R. Schomberg, Appellant.** — Judgment affirmed, with costs, with leave to the defendant to withdraw demurrer and answer in twenty days, on payment of costs in this court and in the court below.—Appeal from an interlocutory judgment overruling a demurrer to the complaint.—

PATTERSON, J.: For the reasons stated in the opinion in the case of *Weiland* v. *Forgotston*, decided herewith (*ante*, p. 54), the interlocutory judgment must be affirmed, with costs, but with permission to the demurring defendant, on the payment of costs in this court and in the court below, to withdraw the demurrer and answer within twenty days from the entry of the order of affirmance to be made hereon. Van Brunt, P. J., Rumsey and O'Brien, JJ., concurred.

**Max Gabriel and Another, Appellants, v. The Sicilian Asphalt Paving Company, Respondent** *—Judgment affirmed, with costs.— Appeal from judgment dismissing complaint entered upon a decision of the court at Special Term.—

INGRAHAM, J.: The plaintiffs are engaged in importing and selling asphalt cement and paving materials, and have been engaged in that business since 1877. Among other articles in which the plaintiffs deal is material known as "asphalt mastic," which is manufactured by a German corporation known as the "Vorwohle Asphalt Company," at Escherhausen, Germany. This compound is made of crude rock asphalt and bitumen, with possibly a little oil mixed with it to expedite the fluxing of the material. There was about eighty per cent of the rock asphalt and twenty of bitumen. The rock asphalt is mined in the duchy of Brunswick, Germany. The plaintiffs commenced to import this material in the year 1877, and sold it from 1877 to 1883 as asphalt mastic. The cakes were at first stamped "Vorwohle-Brunswick," and were known and sold as "Brunswick asphalt." Since 1883 the cakes have been stamped "Brunswick, G. & S. Germany." None of the material is manufactured by the plaintiffs, but all of it comes from the German corporation which manufactures and sends it to this country in the form in which the plaintiffs sell it. Prior to 1895 the plaintiffs sold to the defendant crude rock asphalt under a contract which expired in that year. This material seems to have been mined by the Vorwohle Asphalt Company at and near Escherhausen in the duchy of Brunswick in the empire of Germany. Under the contract the defendant was to have the sole and exclusive right to use and sell this crude rock asphalt in the United States of America and in the Dominion of Canada. In 1894 or 1895 the defendant commenced selling a material under the name of "Brunswick Rock Asphalt," which at first seems to have been manufactured of rock asphalt purchased from the plaintiff which had been imported from the duchy of Brunswick, with twenty per cent of bitumen added. The defendant manufactured other asphalt mastic, one made out of Sicilian asphalt rock which the defendant called "Sicilian," another made of Limmer asphalt rock which it called "Limmer," and another manufactured from

asphalt rock from the United Mine of Vorwohle, and that it called "Vorwohle." It is not claimed by the plaintiffs that the cakes of the defendant's material are manufactured so as to resemble the plaintiffs', or that there is any violation of the plaintiffs' right, except by the adoption of the word "Brunswick" in designating the material manufactured from the crude rock that comes from the duchy of Brunswick as "Brunswick Rock Asphalt." The defendant gets this crude asphalt rock in the form of quarried stone, which is ground up and to it is added the necessary bitumen. It is then melted and cast into cakes and stamped "Brunswick Rock Asphalt." All of the crude asphalt which is thus manufactured and called "Brunswick Rock Asphalt" comes from the duchy of Brunswick, and is designated as "Brunswick Asphalt" by the defendant to identify it as asphalt coming from the duchy of Brunswick. Upon this evidence an injunction was asked for against the defendant to restrain it from including in the name of its manufactured article the word "Brunswick," the plaintiffs claiming that they had acquired a trade mark in the use of that word in connection with asphalt mastic. It is not disputed but that the name adopted by the defendant correctly describes the nature of the material. It is rock asphalt from the duchy of Brunswick, and it is difficult to see how the defendant could carry on its business and sell Brunswick asphalt without calling it by that name. There is not the slightest evidence to justify a finding that the name was adopted for the purposes of defrauding the plaintiffs by inducing the public to believe that the material which the defendant sold under the name of "Brunswick Rock Asphalt" was of the plaintiffs' manufacture. The defendant had done nothing except to import rock asphalt from the duchy of Brunswick, subject it to a process which makes it available for use, and then sell it for just what it is and by its true name, which name is quite distinct from that adopted by the plaintiffs. The only thing in common is that the defendant designates its article as "*Brunswick* Asphalt," and it is difficult to see how it could honestly sell it to the public without some such designation indicating that it was Brunswick asphalt and not asphalt from another locality. If the plaintiffs could prevent any other dealers from selling asphalt mined in the duchy of Brunswick as Brunswick asphalt, they would be enabled to establish a monopoly of the importation and sale of such Brunswick asphalt, and there is certainly nothing to justify them in such a claim. This case does not come within the principle established in any of the cases relied on by the plaintiffs of which *Newman* v. *Alvord* (51 N. Y. 194) is an example. It is there said: "The principle upon which the relief is granted is that the defendant shall not be permitted, by the adoption of a trade mark which is untrue and deceptive, to sell his own goods as the goods of the plaintiff, thus injuring the plaintiff and defrauding the public." Here the defendant has not adopted a trade mark which is untrue and deceptive, but is simply selling its goods by a true description as "Brunswick Rock Asphalt." We think this case comes within the principle established in the case of *Canal Company* v. *Clark* (13 Wall. 320). In that case the complainants were among the first producers of coal from the Lackawanna Valley and the coal sent to market by them had

---

* Decided February 10, 1899.

been generally known and designated as "Lackawanna coal." In deciding that the plaintiff had not the exclusive right to the use of the word "Lackawanna" as a trade mark, the court say: "No one can claim protection for the exclusive use of a trade mark or trade name which would practically give him a monopoly in the sale of any goods other than those produced or made by himself. If he could the public would be injured rather than protected, for competition would be destroyed, Nor can a generic name, or a name merely descriptive of an article of trade, of its qualities, ingredients or characteristics, be employed as a trade mark and the exclusive use of it be entitled to legal protection. * * * And it is obvious that the same reasons which forbid the exclusive appropriation of generic names or of those merely descriptive of the article manufactured and which can be employed with truth by other manufacturers, apply with equal force to the appropriation of geographical names, designating districts of country. Their nature is such that they cannot point to the origin (personal origin) or ownership of the articles of trade to which they may be applied. They point only at the place of production, not to the producer, and could they be appropriated exclusively, the appropriation would result in mischievous monopolies. * * * True it may be that the use by a second producer, in describing truthfully his product, of a name or a combination of words already in use by another, may have the effect of causing the public to mistake as to the origin or ownership of the product, but if it is just as true in its application to his goods as it is to those of another who first applied it, and who, therefore, claims an exclusive right to use it, there is no legal or moral wrong done. Purchasers may be mistaken, but they are not deceived by false representations, and equity will not enjoin against telling the truth." We think, therefore, that the plaintiffs were not entitled to the exclusive right to the use of the word "Brunswick" as describing asphalt mined in Brunswick, and that the court below was right in directing judgment for the defendant. The judgment appealed from is affirmed, with costs. Van Brunt, P. J., Patterson, O'Brien and McLaughlin, JJ., concurred.